J. O. BARBOUR, JR., W. R. HAMILTON, R. S. EUDY, EARL MADES, L. D. SPRINGLE, CHARLES DAVIS, E. W. DOWNUM, JULIAN FULCHER, SR., JAMES H. POTTER, III, H. D. PAUL, CLIFFORD LEWIS, ALBERT CHAPPELL, LESLIE G. MOORE, W. L. ARRINGTON, JARVIS HERRING, MRS. G. W. DUNCAN, IVEY GASKILL, C. WESLEY WILLIS, W. H. POTTER, RESIDENTS AND TAXPAYERS OF CARTERET COUNTY, NORTH CAROLINA, IN THEIR OWN INTEREST AND IN THE INTEREST OF ALL OTHER RESIDENTS AND TAXPAYERS OF CARTERET COUNTY WHO MAY MAKE THEMSELVES PARTIES TO THIS ACTION v. CARTERET COUNTY; S. A. CHALK, JR., HAROLD TAYLOR, DAVID YEOMANS, GASTON SMITH AND MOSES HOWARD, CONSTITUTING THE BOARD OF COUNTY COM-

MISSIONERS OF CARTERET COUNTY, THE LAST NAMED BEING CHAIR-
MAN OF SAID BOARD OF COUNTY COMMISSIONERS.

(Filed 16 June, 1961.)

**1. Taxation § 6—**

A county may issue its bonds or bond anticipation notes for the special
purpose of constructing and operating a public hospital, there being legis-
lative approval therefor, G.S. 153-77(d), but such bonds are not for a
necessary expense and may be issued only after approval of a majority
of those voting in an election held for that purpose. Constitution of
North Carolina, Art. VII, § 7.

**2. Taxation § 11—**

The order of the county commissioners of a county for the issuance
of county bonds, stipulating the purpose and amount of the bonds, and
such other conditions as the county commissioners may annex, G.S. 153-78,
constitutes the proposition submitted to the voters and such stipulations
are controlling.

**3. Same—**

Allegations to the effect that a bond order stipulated that the issuance
of the proposed bonds should be conditioned upon the refinancing of other
bonds of the county, and that no agreement had been made with the
holders of such other bonds for repayment or acceptance of refunding
bonds in discharge thereof, states a cause of action to enjoin the issu-
ance of the proposed bond anticipation notes.

**4. Payment § 5—**

A debtor cannot compel his creditor to accept payment before maturity
in the absence of agreement.

**5. Taxation § 12—**

The expenditure of the proceeds of bonds in accordance with the pur-
pose for which the bonds were issued is a duty resting upon the county
commissioners, G.S. 153-9(8) (9), and the courts will not substitute their
judgment for that of the county officials honestly and fairly exercised,
but allegations to the effect that the commissioners had agreed to pay
a specified sum for designated property, that the property had not been
appraised, and that the price agreed was double the value of the property,
are sufficient upon demurrer to charge bad faith, justifying a court of
equity in acting to prevent the alleged misuse of public funds.

**6. Pleadings § 12—**

The admission by demurrer of the facts alleged in the pleadings are
in no way binding when the cause is heard on the merits.

PARKER, J., concurs in result.

APPEAL by plaintiffs from *Cowper, J.*, April 1961 Term of CARTERET.
Plaintiffs, taxpayers of Carteret County, instituted this action to
(1) determine the validity and enjoin the sale of a bond anticipation

note in the sum of $100,000 which defendants proposed issuing to acquire properties for the construction of a public hospital, and (2) enjoin defendants from expending any monies which might be derived from a sale of the note for the purchase or construction of a hospital on a lot described in the complaint. As the basis for the relief sought, plaintiffs divide their complaint into four causes of action—the first, relating to the right of defendants to issue and sell the note; the remaining three, to the right to use any monies which might be derived from the sale of the note or bonds in acquiring or constructing a hospital on the described lot.

Defendants demurred to the complaint for that it failed to state a cause of action and for asserted misjoinder of causes. The demurrer was sustained. Judgment was entered dismissing the action. Plaintiffs appealed. Defendants' motion to advance the appeal and hear the same at this term was allowed.

*C. R. Wheatly, Jr. and Thomas S. Bennett for plaintiff appellants.*
*Luther Hamilton, Jr. for defendant appellees.*

RODMAN, J. No valid bond anticipation note may be issued unless authority exists for the issuance of bonds to provide funds to pay the note. G.S. 153-108.

The General Assembly has given its approval to the issuance of bonds by counties for the special purpose of erecting and purchasing hospitals. G.S. 153-77(d). The construction and operation of a public hospital is not a necessary expense in the sense that expression is used in the Constitution. *Board of Managers v. Wilmington,* 237 N.C. 179, 74 S.E. 2d 749, and cases there cited. Bonds cannot, therefore, be issued by a county for the purpose of providing hospital facilities unless approved by a majority voting at an election held for that purpose. N. C. Constitution, Art. VII, sec. 7; *Sessions v. Columbus County,* 214 N.C. 634, 200 S.E. 418; *Power Co. v. Clay County,* 213 N.C. 698, 197 S.E. 603; G.S. 153-92.1

The first step looking to the issuance of bonds by a county is an order of the county commissioners. This order designates the purpose for which bonds are to be issued, the aggregate amount thereof, and such other conditions as the county commissioners may annex. G.S. 153-78. When the bond order is submitted to and approved by the electorate, governing authorities cannot ignore conditions precedent to the sale or use the proceeds of the sale for an unauthorized purpose. As said in *Waldrop v. Hodges,* 230 N.C. 370, 53 S.E. 2d 263: "The law is founded on the principle of fair play, and fair play demands that defendants keep faith with the electors of the district."

*Lewis v. Beaufort County,* 249 N.C. 628, 107 S.E. 2d 77; *Greensboro v. Smith,* 239 N.C. 138, 79 S.E. 2d 486; *Parker v. Anson County,* 237 N.C. 78, 74 S.E. 2d 338; *Rider v. Lenoir County,* 236 N.C. 620, 73 S.E. 2d 913; *McCracken v. R.R.,* 168 N.C. 62, 84 S.E. 30.

The Legislature has authorized counties to issue bonds for the purpose of "Funding or refunding of valid indebtedness if such indebtedness be payable at the time of the passage of the order authorizing the bonds or be payable within one year thereafter, or, although payable more than one year thereafter, is to be cancelled prior to its maturity and simultaneously with the issuance of the funding or refunding bonds . . ." G.S. 153-77(h).

We summarize the allegations on which plaintiffs base their right to relief: Prior to July 1937 Carteret County had bonds outstanding which were in default. It entered into an agreement with a committee representing bondholders that it would create a sinking fund to pay the bonds at maturity and would annually levy a tax sufficient to provide the sinking fund with a minimum of $90,000. It has failed to comply with its agreement. (This agreement is referred to for its provisions but is not attached to and made a part of the complaint.) Bonds to be paid with the sinking fund mature 1 July 1977. "(I)n November 1960 the voters of Carteret County voted in a referendum and by their vote agreed to the issue of One Million ($1,000,000.00) Dollars Hospital Bond, but said issue was predicated on a refinancing of the bonded indebtedness in order that the tax burden on the taxpayers of this county would not be so heavy . . ." "(A)s an element of the bond order or notice a refinancing of the present indebtedness of said county has been contemplated, said refinancing to be placed into effect simultaneously with the issuance of bonds and the issuance of said bonds being conditioned thereon . . . . as yet no agreement has been effected for the reissuance of bonds; neither have plans been effected for said reissuance . . ."

Giving these allegations the liberal interpretation we are required to accord, *Lynn v. Clark,* 254 N.C. 460; *Insurance Co. v. Chevrolet Co.,* 253 N.C. 243, 116 S.E. 2d 780; *Moore v. W O O W, Inc.,* 253 N.C. 1, 116 S.E. 2d 186; we think the complaint alleges: (1) Carteret County has a large outstanding indebtedness incurred prior to 1937, maturing 1 July 1977. Sinking fund requirements have not been complied with to provide payment of these bonds at maturity. (2) The ordinance authorizing the issuance of hospital bonds declared the present debt of the county would be refunded before the hospital bonds were issued. The voters approved the hospital bonds on that condition. (3) No effort has been made by the governing authorities to reach an agreement with the bondholders to provide for prepayment of the

outstanding bonded indebtedness.

Since a debtor cannot compel his creditor to accept payment before maturity except upon terms stipulated, *Bakeries v. Insurance Co.,* 245 N.C. 408, 96 S.E. 2d 408, and the bonds to be refunded do not mature until 1 July 1977, it is clear that Carteret County does not now have the right to issue the hospital bonds authorized at the November election. Because the county has no authority to issue the bonds, it has no authority to issue bond anticipation notes to be repaid from said bond issue.

It may be conceded that the complaint is not a model of plain and concise statement of facts as required by G.S. 1-122. We have given it the interpretation demanded by the statute. G.S. 1-151. If we have given an interpretation more favorable to plaintiffs than the allegations warrant, defendants could have protected themselves by moving for an order requiring the complaint to be made definite and certain. G.S. 1-153. Such a motion followed by an order requiring specific and definite allegations, including, if proper, the inclusion of copies of the bondholders' agreement and the bond ordinance, would not have prevented defendants from demurring.

Do the allegations of the second, third, and fourth so-called causes of action relating to the acquisition of the proposed site suffice to state a cause of action?

The answer to this question must be determined independently of the right to issue bonds as these allegations presuppose the availability of funds to make the purchase.

County commissioners, in approving the design, the method of construction, the site for a public building, and the amount to be paid for the site, are performing duties inherent to their offices, expressly conferred by the Legislature. G.S. 153-9(8), (9). Courts have no right to pass on the wisdom with which they act. Courts cannot substitute their judgment for that of the county officials honestly and fairly exercised. For a court to enjoin the proposed expenditure, there must be allegation and proof that the county officials acted in wanton disregard of public good. *Burton v. Reidsville,* 243 N.C. 405, 90 S.E. 2d 700; *Kistler v. Board of Education,* 233 N.C. 400, 64 S.E. 2d 403; *Waldrop v. Hodges, supra; Jackson v. Commissioners,* 171 N.C. 379, 88 S.E. 521; *Commissioners v. Commissioners,* 165 N.C. 632, 81 S.E. 1001; *Newton v. School Comm.,* 158 N.C. 186, 73 S.E. 886; *Jeffress v. Greenville,* 154 N.C. 490, 70 S.E. 919.

While plaintiffs make allegations which they divide into three separate causes of action, we think the allegations are all directed to a single factual conclusion, i.e., the county commissioners, in total disregard of their duty to the public, intended to squander public

funds. They allege facts with respect to the size and location of the lot, the character of the soil, and other factors which are addressed not only to its suitability for the purpose intended, but likewise addressed to the fair market value of the lot.

These general allegations as to location and suitability are accompanied by this specific allegation in the so-called fourth cause of action: "That the defendants, for reasons unknown to these plaintiffs and for causes known only to themselves, have agreed to pay the heavy unwarranted sum of $75,000 for 80.98 acres of land described in that certain deed from Earle W. Webb to Eva Arnold Webb, of record in Book 73, page 387, without first having said property appraised and its value determined. That as these plaintiffs are advised, believe and so aver, said sum is more than twice what said property should be reasonably worth, is excessive, and as such is an unwarranted waste of the taxable revenue of Carteret County. That the action on the part of the defendants is arbitrary, capricious, and without regard to what is a proper price to pay for said premises and is being done in a spirit of haste in an attempt to effect for reasons unknown to these plaintiffs a site settlement as to the county hospital to the detriment of the taxpayers of Carteret County who will be expected to repay said costs and charges as a result of an ad valorem levy on their property."

The demurrer admits the commissioners have, without appraisal or other investigation as to value and for reasons known only to them, hastily agreed to pay $75,000 for property reasonably worth less than half that sum. Such conduct does not comport with the duty which public officials owe those they represent. It manifests bad faith, not bona fide action. It suffices to justify court action to prevent misuse of public funds.

We hold the factual allegations admitted to be true by the demurrer suffice to state causes of action on which a judgment can be entered enjoining the issuance of the bond anticipation note and the expenditure of $75,000 for the purchase of a lot worth less than half that sum.

Even if the complaint had failed to state a cause of action, permission should have been given to amend. *Lumber Co. v. Pamlico County*, 250 N.C. 681, 110 S.E. 2d 278.

Plaintiffs should, on motion, be permitted to amend and make more specific and certain, as the court in its discretion may permit or require. Of course the factual admissions resulting from the demurrer are in no way binding on defendants when the cause is heard on the merits.

Reversed.

PARKER, J., concurs in result.