M. S. HATCHER AND WIFE, BETTY M. HATCHER v. EARL G. ROSE AND WIFE, BONNIE H. ROSE

No. 171PA90

(Filed 14 August 1991)

**Payment § 5 (NCI3d) — mortgage note — silence as to prepayment — right to prepay**

The law of North Carolina prior to the enactment of N.C.G.S. § 24-2.4 permitted the prepayment of a promissory note executed for the purchase of real estate when the note was silent as to prepayment.

**Am Jur 2d, Mortgages § 397.**

ON discretionary review of the decision of the Court of Appeals, 97 N.C. App. 652, 389 S.E.2d 442 (1990), reversing the judgment entered in favor of defendants by *Wallace, J.,* on 7 April 1989 in the District Court, RICHMOND County, and awarding summary judgment for plaintiffs. Heard in the Supreme Court 14 November 1990.

*Page, Page & Webb, by John T. Page, Jr., for plaintiff-appellees.*

*Leath, Bynum, Kitchin & Neal, P.A., by Henry L. Kitchin and Stephan R. Futrell, for defendant-appellants.*

HATCHER v. ROSE

[329 N.C. 626 (1991)]

FRYE, Justice.

In this appeal, defendants present us with the issue of whether prepayment is allowed on a promissory note executed for the purchase of real estate when the note does not by specific language either prohibit or permit prepayment. We answer this question in the affirmative and reverse the Court of Appeals' decision directing summary judgment for plaintiffs.

Defendants Earl G. Rose and Bonnie H. Rose, who are husband and wife, purchased real property for the sum of $70,000 from the plaintiffs, M. S. Hatcher and Betty M. Hatcher, who are also husband and wife. Defendants executed a promissory note on 7 July 1983 in favor of plaintiffs. The note was in the amount of $70,000 plus interest at the rate of nine percent (9%) per annum and was secured by a deed of trust on the subject property which consisted of two tracts of real property in the Beverly Hills Subdivision in Richmond County, North Carolina. The first payment on the note was due on 1 August 1983 in the amount of $629.81. The remaining payments of $629.81 were due on the first day of each successive month until the note was paid in full. Defendants' attorney, using a 1977 North Carolina Bar Association Form No. 5A, prepared the deed of trust securing the note. The deed of trust provided: "The final due date for payment of said promissory note, if not sooner paid, is July 1, 2003."

Defendants alleged in their answer that they notified plaintiffs in writing in February 1988 that they wanted to pay off the remaining balance of the principal of the note and interest due at that time because they had secured alternate financing for the amount due plaintiffs. Plaintiffs indicated that they would refuse to accept payment of the remaining balance. Defendants made each monthly installment through 1 March 1988 and tendered full payment of the outstanding balance and interest in the amount of $63,601.21 on 11 May 1988. Plaintiffs refused this tender and brought this action on 27 September 1988, asking only for recovery of the installments which were unpaid at the time of this action, the payments for April, May, June, July, August, and September of 1988. In defense, defendants asserted that the instruments in this transaction did not expressly contain any restriction against prepayment and that defendants were entitled to prepay this obligation and have the deed of trust cancelled of record.

Both parties moved for summary judgment, and the trial judge, in a judgment filed 7 April 1989, granted summary judgment in favor of defendants. In the judgment, the trial judge concluded that defendants were entitled to prepay the note and directed plaintiffs to mark the promissory note "Paid and Fully Satisfied" upon defendants' payment of $63,601.21. The Court of Appeals reversed and remanded the case to the trial court for entry of judgment for plaintiffs. *Hatcher v. Rose*, 97 N.C. App. 652, 655, 389 S.E.2d 442, 444 (1990). We allowed defendants' petition for discretionary review on 13 June 1990.

Defendants contend that at common law there was a presumption of a right of prepayment when the note was silent. Plaintiffs contend that the Court of Appeals was correct in its conclusion that at common law the debtor could not compel the creditor to accept prepayment when the note was silent. *Id.* at 654, 389 S.E.2d at 443. Unfortunately the common law in North Carolina on this matter is not clear, and we must now determine whether defendants have the right to prepay the note and have their land released from the deed of trust when the note is silent as to that right.

As a starting point, we turn to the law as it exists today in our General Statutes and then look backward to determine how the law evolved to its present state. In 1985, the North Carolina General Assembly enacted N.C.G.S. § 24-2.4 which provides:

A borrower may prepay a loan in whole or in part without penalty where the loan instrument does not explicitly state the borrower's rights with respect to prepayment or where the provisions for prepayment are not in accordance with law.

N.C.G.S. § 24-2.4 (1986). Under the provisions of this statute, clearly defendants have both the right to prepay this note and the right to prepay without paying a penalty. However, this statute is not applicable in the present case because the note was signed before the effective date of this statute.

In concluding that summary judgment was appropriate for plaintiffs because defendants had no right of prepayment, the Court of Appeals cited two cases, *Barbour v. Carteret County*, 255 N.C. 177, 120 S.E.2d 448 (1961), and *Smithwick v. Whitley*, 152 N.C. 366, 67 S.E. 914 (1910), as authority. *Hatcher v. Rose*, 97 N.C. at 653-54, 389 S.E.2d at 443. The Court of Appeals

acknowledged that neither case is on point but concluded that *Barbour* is analogous. *Id.* at 653, 389 S.E.2d at 443. We disagree.

*Barbour* involved the prepayment of county bonds rather than prepayment of a note secured by a deed of trust. This point alone · is enough to distinguish *Barbour* from the present case because municipal bonds and a promissory note secured by real estate are different instruments which by their nature serve different purposes. However, we also find that the language in *Barbour*, which is quoted by the Court of Appeals, is inapplicable in the present situation. From *Barbour*, the Court of Appeals quotes the following, "a debtor cannot compel his creditor to accept payment before maturity except upon terms stipulated." *Id.* (quoting *Barbour v. Carteret County*, 255 N.C. at 181, 120 S.E.2d at 451). For this proposition, *Barbour* cited *Bell Bakeries, Inc. v. Jefferson Standard Life Ins. Co.*, 245 N.C. 408, 96 S.E.2d 408 (1957).

*Bell Bakeries* involved a note which expressly permitted prepayment and also provided for a penalty if the debtor chose to prepay. The note provided that the creditor could charge the debtor an additional amount as a penalty for prepayment. *Id.* at 418, 96 S.E.2d at 410. The plaintiff in *Bell Bakeries* paid the penalty and then brought the action to recover the money which it had paid, claiming that it paid the money as a result of duress. *Id.* This Court concluded, "This provision was legal and plaintiff could not elect to repay the entire loan without complying with this provision." *Id.*

Unlike the present case where the note is silent as to prepayment, *Bell Bakeries* clearly provided for prepayment. Thus, the language, "except upon terms stipulated," found in *Barbour* with a cite to *Bell Bakeries* cannot stand for the proposition that prepayment is not allowed unless specifically provided for · in the note since *Bell Bakeries* did not involve a situation where the note was silent on prepayment. *Bell Bakeries* held that if the agreement includes a provision for payment of a penalty for prepayment, the debtor must pay that penalty and the penalty can be legally enforced. *Bell Bakeries* did not answer the question of whether a right to prepayment exists when the note is silent as to that right. The words, "except upon terms stipulated," clearly refer to the terms provided for the penalty upon prepayment and not to whether there is a right to prepayment when the note is silent on that point. Thus, the language in *Barbour*, quoted by the Court of Appeals as support for the proposition that there is no right to prepay

except where the note specifically provides for it, does not stand for that proposition.

The Court of Appeals also cited *Smithwick* for the statement that a creditor is "not required by law to accept payment of the unmatured notes before maturity or to surrender the mortgage." *Smithwick v. Whitley*, 152 N.C. at 369, 67 S.E. at 915. *Smithwick* is not on point because *Smithwick* was an action for usury. *Id.* In *Smithwick*, plaintiff gave defendant ten different notes which matured each January for ten consecutive years. Plaintiff wanted to pay off some of the notes early, and defendant agreed to accept the early payment but told plaintiff he would only accept the prepayment if plaintiff made an additional payment equaling the amount of interest on each note if it had not been paid early. *Id.* at 366-67, 67 S.E. at 914. Plaintiff made the additional payment and then sued defendant for usury. *Smithwick* is different from the present case because the creditor in *Smithwick*, unlike plaintiffs in the present case, agreed to accept prepayment and thus *Smithwick* did not involve a resolution of the issue of whether a right to prepayment existed if the note was silent. Furthermore, *Smithwick* does not cite any legal authority for the statement which the Court of Appeals quoted from *Smithwick*.

The Court of Appeals stated, "based upon *Barbour* . . . and the language in *Smithwick* . . . we hold that at common law there was no right to compel the creditor to accept prepayment of a debt where the contract was silent as to prepayment." *Hatcher v. Rose*, 97 N.C. App. at 654, 389 S.E.2d at 443. Plaintiffs likewise contend that *Barbour*, *Smithwick*, and *Bell Bakeries* all stand for the proposition that the common law in North Carolina had no presumption of a right to prepay when the note was silent. We do not read *Barbour*, *Smithwick*, and *Bell Bakeries* as supporting the proposition that the common law in North Carolina does not allow prepayment when the note is silent on the matter. Furthermore, we find no other cases in North Carolina which directly address the issue of whether the common law provided for prepayment in the absence of a specific provision allowing prepayment. Ordinarily where this Court has not clearly stated what the common law on a particular matter is, we would look to the common law of England as it existed at the time of the signing of the Declaration of Independence. N.C.G.S. § 4-1 (1986); *Steelman v. City of New Bern*, 279 N.C. 589, 184 S.E.2d 239 (1971). However, the status of the common law of England as it existed at the

time of the adoption of the Declaration of Independence appears to be the subject of debate among the authorities.

Defendants direct us to an article which includes a detailed analysis of the common law rules of prepayment and which states:

> For the past one hundred and fifty years legal scholarship has assumed that a borrower's inability to prepay mortgage indebtedness without the lender's consent was a principle embedded in the common law since its early beginnings. A reexamination of the leading cases and commentaries, however, reveals that this assumption is unjustified.

Alexander, *Mortgage Prepayment: The Trial of Common Sense*, 72 Cornell L. Rev. 288, 289 (1987). After an analysis of common law as it evolved in England and was adopted in the United States, the author concludes, "Contrary to traditional wisdom, the common law prior to 1825 did not clearly deny the debtor the right to prepay his mortgage." *Id.* at 308. This article appears to cast doubt on the commonly held belief that the common law inherited from England did not allow prepayment of the note when the note was silent on the right of prepayment.

Since it is apparent that this Court has not yet determined whether the common law right of prepayment exists in North Carolina and since the status of the common law in England at the time of the adoption of the Declaration of Independence is uncertain, we must look elsewhere to determine whether a right to prepay existed in this state prior to the enactment of N.C.G.S. § 24-2.4. Based on legislative enactments regulating prepayment penalties, the practice and procedure followed in this state at the time of this note, a learned treatise on North Carolina property law, and case law and statutes in other jurisdictions, we conclude that there is a right of prepayment when the note is silent as to that right.

On 21 June 1967, the General Assembly enacted chapter 852 which added a new section to Chapter 24 of the General Statutes to be designated N.C.G.S. § 24-10. This act established a maximum rate of interest for loans secured by real estate. The act also provided:

> Any loan made pursuant to the provisions of this Section may be prepaid in part or in full, after 30 days notice to the lender, with a maximum prepayment penalty of one per cent (1%) of the outstanding principal balance at any time within one

year after the first payment on principal, and thereafter, there shall be no prepayment penalty.

1967 N.C. Sess. Laws ch. 852, § 1.

In 1969, this statute was replaced by a new § 24-10 entitled "Maximum fees on loans secured by real property." This statute differentiates between loans where the principal amount is less than $300,000 and is secured by real property, and other loans, and limits the fees or discounts that a lender may charge in connection with such loans. Subsection (b) provides:

> Any loan made under G.S. 24-1.1 in an original principal amount of one hundred thousand dollars ($100,000) or less may be prepaid in part or in full after thirty (30) days notice to the lender, with a maximum prepayment fee of two per cent (2%) of the outstanding balance at any time within three (3) years after the first payment of principal and thereafter there shall be no prepayment fee provided that there shall be no prepayment fee charged or received in connection with any repayment of a construction loan and except as herein provided, any lender and any borrower may agree on any terms as to prepayment of a loan.

1969 N.C. Sess. Laws ch. 1303, § 6.

The loans covered under N.C.G.S. § 24-10 are loans made under N.C.G.S. § 24-1.1 which is entitled "Contract rates." *See* N.C.G.S. § 24-10 (1986). In 1969, the General Assembly amended a portion of § 24-1.1 to set a maximum interest rate for nonbusiness real estate loans. *See* 1969 N.C. Sess. Laws ch. 1303, § 1. However, in 1973 the General Assembly enacted chapter 1119 which added N.C.G.S. § 24-1.1a to Chapter 24. This statute was entitled "Contract rates on home mortgage loans" and provided:

> Notwithstanding any other provision of this Chapter or any other provision of law, such contract shall provide that no prepayment penalties shall be charged to any party with respect to any such first mortgage home loan.

1973 N.C. Sess. Laws ch. 1119, § 1. This statute was amended by the 1975 session of the General Assembly to provide:

> No prepayment fees shall be contracted by the borrower and lender with respect to any home loan secured by a first mortgage or first deed of trust where the principal amount

borrowed is one hundred thousand dollars ($100,000) or less. The provisions of G.S. 24-10(b) relating to prepayment fees shall apply to home loans secured by a first mortgage or first deed of trust where the principal amount borrowed is in excess of one hundred thousand dollars ($100,000).

1975 N.C. Sess. Laws ch. 260, § 1. The current version of that provision of the statute, as amended by 1977 N.C. Sess. Laws ch. 542, § 1, and effective on 13 June 1977, provides:

No prepayment fees shall be contracted by the borrower and lender with respect to any home loan where the principal amount borrowed is one hundred thousand dollars ($100,000) or less; otherwise a lender and a borrower may agree on any terms as to the prepayment of a home loan.

N.C.G.S. § 24-1.1A(b) (Cum. Supp. 1990).

These legislative enactments strongly suggest a recognition by the General Assembly of a right on the part of the debtor to pay off his mortgage debt at any time subject only to reasonable restrictions made known to the debtor. In 1967, the legislature enacted restrictions in § 24-10 which applied to all loans governed by § 24-1.1 and then in 1973 enacted restrictions in § 24-1.1A specifically targeted for home mortgage loans. Finally in 1985, the General Assembly enacted § 24-2.4 providing for prepayment without penalty for any loan where the loan instrument is silent on the right of prepayment. The earlier statutes, § 24-10 and § 24-1.1A, both appear to be based on the presumption that a debtor had the right of prepayment, and these statutes were enacted to limit the amount of prepayment fees that could be charged if the debtor decided to pay off the loan early. Thus, these statutes provide a strong indication that the General Assembly recognized that the debtor had the right of prepayment unless that right was contracted away and that the debtor needed protection from overly burdensome prepayment fees.

When this note and deed of trust were prepared and signed, the attorney representing defendants at that time used a standard North Carolina Bar Association form for the deed of trust which provides the date for the final payment "if not sooner paid," at least alluding to the fact that prepayment was possible. *But see Kruse v. Planer*, 288 N.W.2d 12 (Minn. 1979) (holding that the term, "if not sooner paid," in the contract for sale of real property

did not authorize prepayment). When the trial judge ruled on this case, she considered, without objection from plaintiffs, the testimony of the attorney who represented defendants at that time and who had prepared the note and the deed of trust. In the testimony, the attorney reported that plaintiff Mr. Hatcher asked him if the papers were made so that defendants could not prepay the note. The attorney responded that he had used the regular deed of trust form and did not think that a provision not allowing prepayment was enforceable. Indeed, at the time this transaction took place, a well respected treatise on North Carolina property law contained the following statement, "[a] mortgagor is entitled to pay off his mortgage debt and to have his land released from the security at any time and returned to him free, clear, and unencumbered." P. Hetrick, *Webster's Real Estate Law in North Carolina* § 284 (1981). This statement of the law was in the original edition of the treatise, *see* J. Webster, *Real Estate Law in North Carolina* § 255 (1971), and was not changed until the authors cited to the Court of Appeals' holding in this case that the common law did not provide for a right of prepayment when the note was silent on the matter. P. Hetrick and J. McLaughlin, *Webster's Real Estate Law in North Carolina* § 284 (Cum. Supp. 1990). Neither the 1971 nor 1988 editions provided any citation of authority to support the statement of the law about the right of prepayment, but as evidenced by the response the attorney made to plaintiff when questioned about defendants' right to prepayment, apparently some practitioners thought that the mortgagor had a right to prepayment. That practitioners believed that the mortgagor had a right to prepayment appears to be in keeping with the strong indication in the statutes as noted above that the General Assembly recognized that the right of prepayment was the rule in this state.

We also note that at least one other jurisdiction has legislatively codified the mortgagor's right to prepay. Florida passed a statute which provides:

> Any note which is silent as to the right of the obligor to prepay the note in advance of the stated maturity date may be prepaid in full by the obligor or his successor in interest without penalty.

Fla. Stat. § 697.06 (1987).

Two other states have in recent years judicially established the mortgagor's right of prepayment when the note is silent. *Skyles*

*v. Burge*, 789 S.W.2d 116 (Mo. Ct. App. 1990) (concluding that a relevant statute on prepayment penalties establishes a maximum allowable prepayment penalty when the note is silent and grants the right to prepay without penalty after five years); *Mahoney v. Furches*, 503 Pa. 60, 468 A.2d 458 (1983) (concluding that not allowing a presumption of a right of prepayment when the note is silent would be an unlawful restraint on alienation). Other jurisdictions have determined that the common law did not allow a right of prepayment when the note was silent. *See, e.g., Arthur v. Burkich*, 131 A.D.2d 105, 520 N.Y.S.2d 638 (3d Dept. 1987) (stating the common law rule from the early nineteenth century that a mortgagor had no right to prepay his mortgage without a prepayment clause included in the mortgage or contrary statutory authority).

Obviously the jurisdictions have treated this issue differently. However, after considering the acts of the General Assembly, specifically N.C.G.S. § 24-10 and § 24-1.1A, we conclude that, prior to the effective date of N.C.G.S. § 24-2.4, and with respect to notes secured by real estate which are silent as to a right of prepayment, the statement in *Webster's* prior to 1990 that a mortgagor is allowed to pay off his mortgage at any time was correct. We conclude that the law of North Carolina prior to the enactment of N.C.G.S. § 24-2.4 was that the mortgagor had the right of prepayment when the note was silent. We apply this rule to the present case and therefore reverse the holding of the Court of Appeals directing summary judgment for the plaintiffs. The trial court's entry of summary judgment for defendants will be reinstated.

Defendants raise two additional issues on appeal, but since we conclude that defendants have the right of prepayment in this case, we find it unnecessary to discuss these other issues in that they were merely alternative arguments in support of the right to prepayment in this action.

Reversed.