456 S.E.2d 31

**Ralph R. YOUNG, Jr. and Marion M. Young, Plaintiffs Below, Appellees,**

v.

**Sheryl SODARO, Defendant Below, Appellant.**

**No. 22349.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 18, 1995.

Decided Feb. 21, 1995.

James T. Cooper, Lovett, Cooper & Glass, Charleston, for appellant.

J.H. Crewdson, Charleston, for appellees.

McHUGH, Justice:

This is an appeal from the March 14, 1994 order of the Circuit Court of Kanawha County, which allowed the prepayment, in full, of a promissory note, the terms of which did not provide for such prepayment. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, the order of the circuit court is reversed.

I

The facts of this case are, for the most part, undisputed. Appellees Ralph R. Young, Jr. and Marion M. Young, by deed dated November 5, 1990, conveyed to B & J Equipment Company, Inc. (hereinafter "B & J Equipment") certain real estate consisting of approximately 1.748 acres located in Union District, Kanawha County, West Virginia. The purchase price for the property was $415,000.

Appellant Sheryl Sodaro loaned B & J Equipment $135,000 to assist in the financing of the purchase of the property. Accordingly, a note in the original principal sum of $135,000 was executed by B & J Equipment and William E. Mattingly and Janice E. Mattingly, individually, and made payable to appellant. This note, dated November 29, 1990, carries interest at the rate of fourteen percent (14%) per annum, on the unpaid principal balance until paid. The note further provides that the principal and interest are to be paid in monthly installments of $1,678.75 each, "commencing on the first day of January, 1991 and continuing thereafter on the first day of each succeeding month until a total of sixty monthly payments have been made, at which time the remaining balance of principal and interest shall become due and will be paid in full. Each of the said monthly installments shall be applied first to

the interest due hereon and the balance, if any, to the principal."[1]

The record reveals that B & J Equipment and the Mattinglys initially tendered to appellant a note granting them the right to prepay the unpaid principal sum prior to maturity.[2] However, appellant specifically rejected the proposed note containing prepayment language, as it was her desire to have the principal and interest paid to her over a sixty-month period. The note upon which the parties eventually agreed did not confer upon the makers the right to prepay the loan prior to maturity. B & J Equipment and the Mattinglys executed a first deed of trust on the property securing the payment of the aforementioned $135,000 note, also dated November 29, 1990, payable to appellant.

B & J Equipment and the Mattinglys subsequently executed a second note, dated November 29, 1990, in the amount of $290,000, payable to appellees. This second note is secured by a deed of trust on the subject property which is a second lien thereon, junior to the deed of trust held by appellant.

When B & J Equipment became delinquent on both notes, appellant advised appellees that she was going to foreclose on the subject property under her first deed of trust if payments due on her note were not brought up to date. In response, appellees sought to foreclose under their second deed of trust so that their lien would not be extinguished by foreclosure under the first lien. Appellant agreed and on February 27, 1992, appellees purchased the subject property at the foreclosure sale for $297,000, which was the total sum then due and owing, including any costs and interest owed thereon. Appellees, consequently, owned the property subject to the note and deed of trust held by appellant.

Appellees claim that it was not until after they paid the delinquencies on the first note that they learned that the interest rate thereon was 14 percent per annum. Upon learning of the terms of the note, appellees made arrangements to borrow money at a lower rate of interest to pay off the first note in full. On March 20, 1992, appellees delivered a check in the amount of $137,939.54 to appellant's attorney as payment in full of the first note. Appellant refused to accept the check on the grounds that the note payable to her does not contain a provision allowing prepayment and that, absent her agreement to the contrary, she is not obliged to accept payment in full of the note in advance of its terms, without inclusion of future interest.

A declaratory judgment action[3] was subsequently filed in Kanawha County Circuit Court.[4] The circuit court held that appellant was required to accept payment in full of the note in the amount of $137,939.54 and that any interest accrued after March 20, 1992, the date appellees attempted to tender payment to appellant, is forfeited and barred. It is from this ruling that appellant now appeals.

## II

The sole issue before this Court is a matter of first impression in West Virginia: whether a debtor has a right to prepay a promissory note, which is secured by a deed of trust, when the instruments are silent and do not expressly grant that right.[5] Though

---

1. The deed of trust contains language similar to that in the note, including the annual rate of interest and monthly payments.

2. The proposed prepayment language provided: "The maker hereof reserves the right to pay the whole, or any part of the principal and interest due hereon at any time."

3. *See* The Uniform Declaratory Judgments Act, *W.Va.Code*, 55-13-1, *et seq.*

4. Appellant also filed a third-party complaint against B & J Equipment and the Mattinglys alleging they would be liable for payment of the note, plus the interest thereon. Appellant has not pursued this third-party claim.

5. A prepayment clause may prohibit prepayment of a debt entirely or it may confer upon the borrower such right, with limitations thereon. Robert K. Baldwin, Note, *Prepayment Penalties: A Survey and Suggestion*, 40 Vand.L.Rev. 409, 412 (1987). A prepayment clause might charge a fee, or penalty, for the right to prepay. A prepayment penalty might be a percentage of the prepaid principal or of the original loan amount. *Id.* at 412–13. *See, e.g., McCausland v. Bankers Life Ins. Co.*, 110 Wash.2d 716, 757 P.2d 941 (1988) (fifteen-year note prohibited prepayment of principal during first seven years of loan but

some states have conferred upon borrowers a statutory right to prepay a loan,[6] no such legislation has been passed in West Virginia. We, therefore, look to the common law as it exists in other jurisdictions.

■ The majority rule is sometimes referred to as the default rule of perfect tender in time, which may be expressed as follows: Absent statutory authority or express contractual language to the contrary, a borrower has no right to prepay his mortgage or deed of trust obligation[7] prior to the maturity date specified on the underlying promissory note and the agreed upon payment schedule is to be enforced. *See Metropolitan Life Ins. Co. v. Promenade Towers Mut. Hous. Corp.,* 84 Md.App. 702, 581 A.2d 846, 849 (1990), *cert. granted,* 322 Md. 333, 587 A.2d 510 (1991);[8] *Metropolitan Life Ins. Co. v. Strnad,* 255 Kan. 657, 876 P.2d 1362 (1994). *See also* 55 Am.Jur.2d *Mortgages* § 397 (1971). In both *Met. Life* II, *supra,* 597 A.2d at 1380 and *Strnad, supra,* 876 P.2d at 1367, the Court of Appeals of Maryland and the Supreme Court of Kansas, respectively, noted:

‘Since the early nineteenth century the general rule has been that a debtor cannot, without the lender's consent, prepay a mortgage debt. More precisely, when a specific amount of indebtedness is secured by a mortgage covering the debtor's real property, and the note specifies a date certain for repayment of the debt, the debtor is not entitled to pay the indebtedness before that date unless the lender agrees to accept such payment. This is the requirement of perfect tender in time.’

(*quoting* Frank S. Alexander, *Mortgage Prepayment: The Trial of Common Sense,* 72 Cornell L.Rev. 288, 290–91 (1987)).

Justification of the rule of perfect tender in time has been expressed in both economic and philosophic terms. Conferring the right of prepayment when such right is absent from the note or mortgage instrument may cause economic hardships upon the lender, "not the least of which include the loss of the bargained-for-rate of return, an increased tax burden, unanticipated costs occasioned by the need to reinvest the principal, and for those creditors anxious to ensure regular payments not unlike an annuity, it undoes the mortgagee's purpose in making the loan."[9] *In re Arthur v. Burkich,* 131 A.D.2d

---

6. principal payment permitted during years eight through ten, if accompanied by 5% fee; after year ten, note could be prepaid without restriction).

6. *See, e.g.,* Fla.Stat.Ann. § 697.06 (West 1994) ("[a]ny note which is silent as to the right of the obligor to prepay the note in advance of the stated maturity date may be prepaid in full by the obligor or his successor in interest without penalty"); N.C.Gen.Stat. § 24–2.4 (1986) ("borrower may prepay a loan ... without penalty where the loan instrument does not explicitly state the borrower's rights with respect to prepayment"); N.J.Stat.Ann. § 46:10B–2 (West 1989) ("[p]repayment of a mortgage loan may be made by or on behalf of a mortgagor at any time without penalty").

Other states have, similarly, passed legislation concerning the right to prepay a loan, with variations and limitations thereon. *See, e.g.,* 41 Pa. Stat.Ann. § 405 (1992) (right to prepay residential mortgages only); Mass.Gen.Laws Ann. ch. 183, § 56 (West 1981) (right to prepay mortgage note secured by first lien on dwelling house of three or less separate households occupied by mortgagor); 815 Ill.Comp.Stat.Ann. 205/4 (Smith–Hurd 1993) (prepayment penalty prohibited where the interest rate is greater than eight percent per annum).

7. While the deed of trust, and not the mortgage, is the instrument used in West Virginia to secure the payment of a debt, this Court has stated that "a deed of trust is in effect a mortgage, the primary difference being the manner in which it is foreclosed." *Firstbank Shinnston v. West Virginia Insurance Co.,* 185 W.Va. 754, 758, 408 S.E.2d 777, 781 (1991) (*citing Rock v. Mathews,* 35 W.Va. 531, 536, 14 S.E. 137, 139 (1891)). *See also Villers v. Wilson,* 172 W.Va. 111, 115 n. 4, 304 S.E.2d 16, 19 n. 4 (1983). In the event there is a default in payment of a debt secured by a deed of trust, the holder thereof need not apply to a court to foreclose it, as the holder of a mortgage would. Instead, the property merely becomes liable to sale under the power of sale conferred upon the trustee. *W.Va.Code,* 38–1–3 [1923]; 13A M.J., *Mortgages and Deeds of Trust,* §§ 4, 7 (1991).

8. The Court of Appeals of Maryland granted certiorari (hereinafter *"Met. Life* II") from the decision by the Court of Special Appeals of Maryland (hereinafter *"Met. Life* I"), affirming, *inter alia,* the presumption against prepayment.

9. This is particularly true in the present case considering the creditor is an individual and not a lending institution.

105, 520 N.Y.S.2d 638, 639 (1987) (*citing,* Alexander, *supra* at 310–17) (footnote added). *See also Strnad, supra* at 1368; *Dugan v. Grzybowski,* 165 Conn. 173, 332 A.2d 97, 99 n. 2 (1973).[10] In the present case, appellant has indicated that as a result of liquidating certain assets in order to loan B & J Equipment $135,000 to purchase the property, she incurred additional income tax liability.

The rule of perfect tender in time has further been rationalized philosophically, viewing the rights of creditor and debtor as equal and reciprocal:[11]

"'A creditor can no more be compelled to accept payments on a contract before, by the terms thereof, they are due, than can a debtor be compelled to make such payments before they are due. The time of payment fixed by the terms of a pecuniary obligation is a material provision, and each party has the right to stand on the letter of the agreement and perform accordingly.'"

*Kruse v. Planer,* 288 N.W.2d 12, 14 (Minn. 1979) (*citing Peryer v. Pennock,* 95 Vt. 313, 115 A. 105 (1921)). *See also Strnad, supra* at 1367 ("a debtor has no more right to pay off an obligation prior to its maturity date than the creditor has to compel collection of the debt prior to its maturity"); Alexander, *supra* at 317.

In contrast, the minority of jurisdictions has adopted the rule that, absent a statute or contractual provision to the contrary, there is a presumption of a right to prepay a note where a mortgage is silent as to that right. *Mahoney v. Furches,* 503 Pa. 60, 468 A.2d 458 (1983). Though the *Mahoney* court agreed with the majority's rationale that "the use of the mortgage for private investment purposes is increasing and may also support a policy encouraging such use[,]" it found the more dominant policy to be the free alienability of land "since the fundamental purpose of the mortgage note in most instances is to secure a debt incurred in the purchase of land from which the debt arises rather than to secure investment income for the mortgagee." *Id.,* 468 A.2d at 461. *But see Strnad, supra; Met. Life* I, *supra; Met. Life* II, *supra; Burkich, supra* (all of which reject the restraint on alienation argument).

Though we are mindful of the minority rule and the various reasons for which it has been adopted in some states, *Hatcher v. Rose,* 329 N.C. 626, 407 S.E.2d 172 (1991);[12] *Skyles, supra; Spillman v. Spillman,* 509 So.2d 442 (La.Ct.App.1987), we, nevertheless, find the majority rule to be more compelling. Therefore, we hold that, under the rule of perfect tender in time, a debtor, absent statutory authority or contractual language to the contrary, has no right to prepay a promissory note secured by a deed of trust prior to the date of maturity.

For the reasons stated herein,[13] the order of the Circuit Court of Kanawha County, dated March 14, 1994, is reversed.

Reversed.

**10.** Note 2 of *Dugan* states: "'[t]his freedom of the mortgagee from anticipation [of prepayment] is of increasing value as the mortgage becomes more and more an investment instrument, designed to secure a regular flow of income. Current institutional mortgages customarily exact substantial amounts as conditions of accepting prepayment.' 3 Powell, Real Property, p. 656 n. 4. In contrast, a mortgage note designed primarily to give the lender security for the timely repayment of his money at a profitable rate of interest, will more likely contain a prepayment clause without a penalty attached. The object of the clause is generally to encourage repayment, whereas *in the absence of such a clause, courts tend to construe the mortgage note as intended to secure regular investment income to the mortgage over a definite period of time.*" (emphasis added and citations omitted).

**11.** *Skyles v. Burge,* 789 S.W.2d 116, 119 (Mo.Ct.App.1990).

**12.** The relevant North Carolina statute permitting prepayment of a loan where the loan instrument is silent thereon, previously cited in n. 6, was not applicable to the *Hatcher* case in that the note was signed before the effective date of the statute. *Hatcher,* 407 S.E.2d at 173.

**13.** We find appellees' contentions that they were not the original makers of the note nor aware of it prior to foreclosing under their second deed of trust to be without merit. Specifically, appellees maintain they were unaware that the note carried an annual interest rate of fourteen percent. The first deed of trust was properly recorded and reflected the terms of the underlying promissory note. Appellees clearly had notice of these instruments and should have been cognizant of their terms considering that, upon purchase of that property, they stood in the shoes of the instruments' original makers. *See* W.Va.Code, 40–1–9 [1963]; *Lightner v. Lightner,* 146 W.Va.

BROTHERTON, J., did not participate.

FOX, J., sitting by temporary assignment.

1024, 1034, 124 S.E.2d 355, 362 (1962). *See also Highway Properties v. Dollar Savings Bank,* 189 W.Va. 301, 431 S.E.2d 95 (1993).