No. 70,379

METROPOLITAN LIFE INSURANCE COMPANY, *Appellee*, v. PAUL W. STRNAD, CYNTHIA KAY STRNAD, and JSB FARMS, INC., (FORMERLY KNOWN AS STRNAD FARM & RANCH, INC.), *Appellants*.

(876 P.2d 1362)

658

Opinion filed June 3, 1994.

*Kyle L. Larson,* of Goodland, argued the cause and was on the brief for appellants.

*Martin W. Bauer,* of Martin, Pringle, Oliver, Wallace & Swartz, of Wichita, argued the cause, and *Angela L. Rud,* of the same firm, and *Michael Curoe,* of Metropolitan Life Insurance Company, were with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: This involves a dispute as to the debtors' right to prepay the principal and interest of a promissory note and mortgage. The district court found that the debtors' right of prepayment was governed by the contract and granted summary judgment to plaintiff, the creditor. The debtors appealed, claiming that they had the right of prepayment of the note and mortgage at any time even though two dates for prepayment were specifically provided in the documents. The creditor's motion to transfer the case to this court pursuant to K.S.A. 20-3017 was granted.

In 1986, the Strnads, as individuals, and Strnad Farm & Ranch, Inc., (the Strnads) executed a promissory note to Metropolitan Life Insurance Company (Metropolitan). The terms of the note were $700,000 at a fixed rate of 11.75% per annum, with semiannual payments of principal and interest over a period ending in March 2001. The interest rate was subject to adjustment by Metropolitan on March 1, 1991, and March 1, 1996. The note contained the following provision:

"Privilege is reserved to pay the loan in part or in full on interest adjustment date [*sic*] of March 1, 1991 and March 1, 1996."

In conjunction with the note, the Strnads executed a mortgage of real estate to secure the debt. The purpose of the loan was for business or agricultural purposes. On March 1, 1991, Metropolitan adjusted the interest rate to 9.25%. The Strnads did not at that time prepay any part of the principal balance.

In April 1993, the Strnads attempted to pay off the balance of the note and accrued interest. Metropolitan refused to accept the prepayment. Metropolitan then filed a declaratory judgment action to determine whether it could be compelled to accept prepayment of the note and interest due on a date other than the dates specified in the note. The parties filed cross-motions for summary judgment.

The district court found that the only issue was whether the Strnads had a right to prepay the note and mortgage at any time other than the two dates specified in the contract. The district judge noted that this was an issue of first impression in Kansas. The judge observed that the majority rule was that in the absence of a specific contractual provision or legislative authority, there is no right to prepay a mortgage. In particular, the judge noted the Missouri Court of Appeals had recently examined the history of the common-law rule of perfect tender in time in regard to the prepayment of mortgages. See *Skyles v. Burges*, 789 S.W.2d 116 (Mo.App. 1990).

The district judge also opined that the Strnads' right to prepay on the two specific dates was a *quid pro quo* for Metropolitan's option to adjust the interest rate on those same dates. The judge noted that other than those two dates, the contract was silent on a right to prepay the debt. The judge observed that the parties could have contracted to provide for unlimited prepayment or agreed to place in the contract an absolute prohibition against prepayment. He found the contract was unambiguous under *Quenzer v. Quenzer*, 225 Kan. 83, 86, 587 P.2d 880 (1978) (" 'Ambiguity does not arise from total omission.' ") and rejected the Strnads' attempt to strictly construe the contract against the drafter of the instruments, Metropolitan.

The district judge also rejected the Strnads' claim that failure to allow prepayment of the note and mortgage was an unreason-

able restraint on alienation. The judge found there had been no specific showing Metropolitan was unreasonably preventing the Strnads from selling or otherwise transferring the property.

The judge noted that the Kansas Legislature had provided for prepayment in certain instances: K.S.A. 16a-2-509, which allows a consumer to prepay in full the unpaid balance of a consumer credit transaction at any time without penalty; K.S.A. 16-207(c), which prohibits prepayment penalties on home loans after six months from the execution of the note; and K.S.A. 58-2309a, which applies to entry of satisfaction of mortgages and duties and liabilities of a mortgagee or assignee of a mortgage. The judge observed that the legislature had specifically not provided for prepayment privileges in commercial or agricultural loans. He opined that, absent legislative changes, it would appear the debtors had no right of prepayment except as specifically provided in the contract.

The judge also pointed out that from a reading within the four corners of the contract, prepayment was provided on only two dates. The judge concluded that it was not the function of the courts to create legislation by judicial action. He posited that the question of providing the right to a debtor of prepayment in an agricultural or commercial loan setting should be determined by the legislature.

The judge concluded that absent statutory authority, the courts have no choice but to agree with the rule of law which has been adopted by the majority of jurisdictions in the United States. He observed that no statutory authority overrode the majority rule that restricts the right of the debtor to prepay a note and mortgage and granted Metropolitan's motion for summary judgment. The Strnads appealed, claiming that they had a contractual and a legal right to prepay the note.

*Standard of Review*

This court's review of the district court's decision is de novo because it involves stipulated facts as well as a question of law, the construction of a written contract. See *Federal Land Bank of Wichita v. Krug*, 253 Kan. 307, Syl. ¶ 1, 856 P.2d 111 (1993); *Hudgens v. CNA/Continental Cas. Co.*, 252 Kan. 478, Syl. ¶ 1,

845 P.2d 694 (1993). "Promissory notes and mortgages are contracts between the parties, and the rules of construction applicable to contracts apply to them. A mortgage and a note secured by it are to be deemed parts of one transaction and construed together as such; the provisions of both should be given effect." *Carpenter v. Riley*, 234 Kan. 758, Syl. ¶ 3, 675 P.2d 900 (1984). This court's analysis must begin within the four corners of the instrument itself. See *Safelite Glass Corp. v. Fuller*, 15 Kan. App. 2d 351, 362, 807 P.2d 677, *rev. denied* 249 Kan. 776 (1991).

## Construction of the Contract

Metropolitan notes that one of the Strnads' arguments is that because the note does not expressly prohibit prepayment, it then permits it. The district judge found that argument failed by concluding that the fact something is not specifically provided for in a contract does not, by itself, make the contract ambiguous. See *Quenzer*, 225 Kan. at 86. If contracts are not ambiguous, courts must give effect to the intent of the parties as expressed within the four corners of the instrument. Metropolitan asserts the inclusion of specific dates for prepayment establishes the parties' intent was not to allow prepayment on any other date and that this court should apply the maxim *"expressio unius est exclusio alterius,"* *i.e.*, the mention of one thing indicates an exclusion of other things not mentioned. It also asserts that by discerning the parties' intent from the language and format of the note and mortgage, it is clear that prepayment was to be permitted on only two dates and the Strnads have attempted to breach the contract by offering to prepay on a different date.

The Strnads argue that the rule of *expressio unius* has never been applied to the construction of contracts and has only been used in construing statutes. For support, they cite *State v. Wood*, 231 Kan. 699, 701, 647 P.2d 1327 (1982), and *In re Olander*, 213 Kan. 282, Syl. ¶ 1, 515 P.2d 1211 (1973). The Strnads' claim that this rule has only been applied in Kansas to statutory construction is incorrect. See *City of Lenexa v. C.L. Fairley Constr. Co.*, 245 Kan. 316, 319, 777 P.2d 851 (1989) (rejecting city's argument that under the *expressio unius* rule an arbitration contract was ambiguous); *Lawrence v. Cooper Independent Theatres*, 177 Kan.

125, Syl. ¶ 1, 276 P.2d 350 (1954) (in construction of a lease, "[t]he maxim, *expressio unius est exclusio alterius*, is an important aid in construing *written instruments.*" [Latter emphasis added.])

The maxim *expressio unius est exclusio alterius* is used in the interpretation and construction of a contract when the intention of the parties is not clear. It is merely an auxiliary rule of construction and is not conclusive; it should be applied only as a means of discovering intent not otherwise manifest and should never be permitted to defeat the plainly indicated purpose of the parties. The extent to which the doctrine should be applied depends in any event on how clearly the drafter's intent is otherwise expressed. See *Johnson v. General Motors Corporation*, 199 Kan. 720, 722, 433 P.2d 585 (1967).

The district court found, and we agree, that the note and mortgage were not ambiguous. The intent is manifest in the written agreements, and there is a specific reason for inclusion of the particular dates. Because the intent to limit the debtors' privilege of prepayment to two specific dates in the note and mortgage is clear, use of the maxim for construction of the note is neither necessary nor permitted.

The Strnads also claim that Metropolitan, as the drafter of the agreement, was in a superior position to protect its rights. They note the rule that when terms of a contract are ambiguous, the terms are construed against the drafter of the instrument. *Thomas v. Thomas*, 250 Kan. 235, 244, 824 P.2d 971 (1992). We agree with the district court that the contract is not ambiguous. There is no reason to apply this rule in our analysis either.

Metropolitan also stresses that since the intent of the parties in making the contract controls, the initial inquiry by the courts is to be limited to the language and format of the contract itself. See *Hollenbeck v. Household Bank*, 250 Kan. 747, 751, 829 P.2d 903 (1992). When a contract is plain and unambiguous, the parties' intent should be determined from the instrument.

Metropolitan points out the note specifies a payment schedule that concludes on March 1, 2001, and provides for prepayment by the Strnads on two specific dates on which Metropolitan also can adjust the interest rate. It points out that no other date or

provision for prepayment is included in the note. Metropolitan notes the district court construed the note as giving only a "limited right of prepayment." Metropolitan asserts that the court cannot reform the contract by rejecting contract language and the parties' clear intent or by substituting other language because one party wants to avoid the perceived burden of the reasonable meaning of the language. See *Schnug v. Schnug,* 203 Kan. 380, 454 P.2d 474 (1969).

## Prepayment of Note—Right or Privilege

*Perfect Tender In Time*

As distinguished from statutory or written law, the common law embraces that great body of unwritten law founded upon general custom, usage, or common consent, and based upon natural justice or reason. It may otherwise be defined as custom long acquiesced in or sanctioned by immemorial usage and judicial decision. 15A Am. Jur. 2d, Common Law § 1, pp. 594-95. By its very nature, the common law exists only where there is no statutory law. It is the law of necessity. *City of Kansas City v. Carpenters Dist. Council of Kansas City,* 237 Kan. 295, 300, 699 P.2d 493 (1985).

The common-law rule regarding prepayment of a note and mortgage was that absent a specific provision in the written instruments providing for prepayment, there was no right for the debtor to prepay the note and mortgage. In *Promenade Twrs. v. Metropolitan Life,* 324 Md. App. 588, 595, 597 A.2d 1377 (1991), the Maryland Court of Appeals noted,

" 'Since the early nineteenth century the general rule has been that a debtor cannot, without the lender's consent, prepay a mortgage debt. More precisely, when a specific amount of indebtedness is secure by a mortgage covering the debtor's real property, and the note specifies a date certain for repayment of the debt, the debtor is not entitled to pay the indebtedness before that date unless the lender agrees to accept such payment. This is the requirement of perfect tender in time.' " (quoting Alexander, *Mortgage Prepayment: The Trial of Common Sense,* 72 Cornell L. Rev. 288, pp. 290-91 [1987]).

The parties agree that the rule of perfect tender in time has not previously been adopted in Kansas. There is no real dispute that the rule of perfect tender in time was part of the common

law at the time of the adoption of what is now K.S.A. 77-109. That statute provides that the common law, as modified by constitutional and statutory law, judicial decisions, and the conditions and wants of the people, shall remain in force in aid of the general statutes of this state. Should the common-law rule of perfect tender in time be adopted in Kansas or has the rule been incorporated into other areas of law? Under the common law, in the absence of statutory law, case law, or contractual permission, a debtor has no more right to pay off an obligation prior to its maturity date than the creditor has to compel collection of the debt prior to its maturity.

Metropolitan asserts that the "large majority of jurisdictions that have considered this issue have held there is no right to prepayment unless specifically provided for in the contract or by legislative action." Metropolitan argues the majority rule is that unless otherwise provided for in the contract, "the mortgagor in an unregulated transaction who promises to repay the loan, in installments at specified times or at a specified date, does not have a right to compel the creditor to accept prepayment." *Promenade Twrs.*, 324 Md. App. at 592. Metropolitan argues this rule places on the borrower the burden of identifying something in the agreement that shows the lender's intent was to accept, or at least not reject, prepayment under the precise facts and terms of the loan documents. See *MacIntyre v. Hark*, 528 So. 2d 1276, 1277 (Fla. Dist. App. 1988); *Henderson v. Guest*, 197 Okla. 443, 172 P.2d 605 (1946).

The Strnads propose that this court adopt a rule, very limited in scope, that for a creditor to prohibit prepayment of a promissory note or to charge a penalty for early payment, appropriate language must be included in the contract between the parties. The Strnads also contend that the rule of perfect tender in time does not prohibit a debtor from prepaying a promissory note, it simply requires that prepayment must include the principal, accrued interest, and unaccrued interest through maturity.

The Strnads recognize the basis for this argument is that the promissory note specifically mentions two dates for prepayment. Rather than excluding prepayment on any other date not men-

tioned, the Strnads argue the contract provision merely reserves their right to prepay the mortgage on two specific dates. They argue that unless the contract specifically precludes prepayment, prepayment should be allowed.

In *Overland Park Savings & Loan Ass'n v. Miller*, 243 Kan. 730, 733, 763 P.2d 1092 (1988), a discussion of the purpose of a prepayment clause can be found. A lending institution obtains money from other sources and then in turn loans it out to the ultimate borrowers at interest rates which are higher than the rate being paid by the lending institution. The difference between the two rates, *i.e.*, the bank's and the borrower's, is the margin of profit from which the bank pays its operating expenses and makes its profit. When a bank loans a large sum of money for a lengthy period of time, it can protect itself by a prepayment clause because the interest rate it is paying to its lender can be locked in at the rate at which it must pay its sources. Should interest rates fall, the ultimate borrower would naturally refinance at the lower interest rate and prepay its loan to the bank. In that event, the bank would have to loan the money to new borrowers at the current, lower interest rate, but the bank would still be locked into paying its sources at the higher rate. Without such prepayment clauses, banks would be reluctant to make large, long-term loans during periods of high interest rates. 243 Kan. at 733-34. See *Arthur v. Burkich*, 131 App. Div. 2d 105, 107, 520 N.Y.S.2d 638 (1987).

This court has previously referred to a prepayment provision in a mortgage as a "privilege." *Meadowlark Hill, Inc. v. Kearns*, 211 Kan. 35, 36-37, 505 P.2d 1127 (1973) (noting parties to the mortgage and note "modified the prepayment *privilege* by extending the period in which no *privilege* was reserved to prepay principal from ten to thirteen years" [Emphasis added.]); *Nichols Co. v. Meredith*, 192 Kan. 648, 650, 391 P.2d 136 (1964) (prepayment *privilege*). But see *In re Estate of Hills*, 222 Kan. 231, 233, 564 P.2d 462 (1977) (quoting agreement that contained provision that purchasers were "given the *right and privilege* of prepayment of any principal amount at the time of any principal payment date." [Emphasis added.]); *Union Central Life Ins. Co.*

*v. Stevens*, 143 Kan. 757, 758, 57 P.2d 57 (1936) (insurance company loaned to defendant a sum of money to be paid back in installments, and defendant "reserved" the *right* to prepay the note "at any time" by discounting it. In these cases, no issue regarding the right to prepay was presented or ruled upon by this court.

*Statutory Right To Prepay*

The Strnads note that in Kansas parties to a contract are presumed to include in the contract all existing and applicable statutes and case law unless a contrary intent is demonstrated. *Steele v. Latimer*, 214 Kan. 329, 336, 521 P.2d 304 (1974). We observe that the promissory note included a provision that it was "made and executed under, and is in all respects to be governed by, the laws of the State of Kansas." They claim that the current Kansas law permits a debtor to make prepayment without penalty. They argue that because the contract is silent as to prepayment, by applying current law, the court must find in their favor.

We note, as did the district court, that the legislature has spoken on the right of prepayment in specific areas of the law. K.S.A. 16-207(c) provides that no prepayment penalty may be assessed for prepayment if made at least six months after execution of a home loan mortgage. K.S.A. 16a-2-509 allows prepayment of the unpaid balance of consumer loans at any time. K.S.A. 17-5512 states that home loans made by savings and loans associations may be prepaid subject to not more than a 1½% penalty of the amount of prepayment. The legislature has also allowed savings and loan associations to prohibit or restrict prepayment for a specified period after the date of the note and mortgage for loans where homes are not involved. K.S.A. 17-5512a. We also observe Metropolitan, a life insurance company, is authorized by K.S.A. 40-2b09(a) to invest in real estate mortgages. The insurance code does not address prepayment provisions in promissory notes and mortgages where the lender is an insurance company. The Uniform Commercial Code also does not address prepayment of notes.

Metropolitan asserts that because the Kansas Legislature has statutorily provided for a right of prepayment in certain instances

but has not done so in relation to loans and mortgages made for business and/or agricultural purposes, the legislature has not rejected the common-law rule of perfect tender in time in the business and agricultural milieu. Metropolitan argues that the legislative record also indicates the legislature "has specifically refused to enact laws regulating prepayment in agricultural or commercial loan settings." For support, Metropolitan points out that the legislature, in 1980, considered deleting subsection (c) of K.S.A. 16-207, which prohibits a penalty from being assessed due to prepayment of a home loan secured by a note and mortgage when prepayment is made more than six months after execution of the instrument. Deletion of this provision would have left the parties free to provide, or not provide, for prepayment opportunities for home loans. Instead, the statute was amended, as requested by the Kansas Savings & Loan League, to restore "the prohibition on prepayments that was deleted and [which] applies the restriction to one-to-four family dwellings *thus not infringing upon larger commercial loans to individuals.*" Minutes of the House Committee on Commercial and Financial Institutions, March 6, 1980, p. 2 (Emphasis added.). Metropolitan argues this demonstrates that the legislature "has rejected any infringement on the freedom of agricultural and business creditors to contract [for] mutually beneficial terms" that "unless a note and mortgage expressly provides for a right of prepayment, it is prohibited" and that this is consistent with the common-law rule of perfect tender in time.

Metropolitan also asserts that K.S.A. 58-2309a, cited by the Strnads for support, which concerns satisfaction of mortgages once the indebtedness is fully paid, has no bearing on this matter. Metropolitan contends that statute relates to situations where the full indebtedness has been paid, which they claim means the principal, and to accrued interest as well as unaccrued interest to the date expressly provided for prepayment. It also claims this court in *Fourth National Bank v. Hill*, 181 Kan. 683, Syl. ¶ 9, 314 P.2d 312 (1957), noted the right to receive a satisfaction of mortgage was "linked" to full payment. It argues that case did not define full payment as the entire amount that would have been due if

the loan had been paid as scheduled. The *Hill* court applied a predecessor statute to K.S.A. 58-2309a, G.S. 1949, 58-308, which required a mortgagee to enter a satisfaction of the mortgage when the debt has been fully paid.

The Strnads challenge Metropolitan's assertion regarding the legislature's failure to amend K.S.A. 58-2309a and K.S.A. 16-207(c). The Strnads contend this is insufficient support for Metropolitan's position because they claim the legislature cannot affirm or reject a rule not yet adopted and that K.S.A. 16-207(c) applies to prepayment penalty provisions, not restrictions on prepayment. The Strnads contend the only Kansas statute that directly addresses prepayment, K.S.A. 16a-2-509, allows prepayment at any time in any consumer loan transaction as defined in the consumer credit code.

### Restraint on Alienation

The Strnads do not allege the contract is illegal, fraudulent, or a product of mistake, or that it was entered into under duress. They argue that the restriction against prepayment on any other dates other than the two specified, if read into the contract, is contrary to public policy. The Strnads assert the public policy against restraints on alienation of land requires that they be allowed to prepay the note and mortgage. They note that restraints on alienation of property are strictly construed by the courts against the party urging the restriction. The Strnads assert that courts recognize that restrictions on prepayment act as a restraint on alienation, citing as examples *Gutzi Associates v. Switzer*, 215 Cal. App. 3d 1636, 1645, 264 Cal. Rptr. 538 (1989) (express provision against prepayment could act as an unreasonable restraint on alienation); *Carpenter v. Winn*, 39 Colo. App. 238, 240, 566 P.2d 370 (1977) (rule that debtor cannot compel creditor to accept prepayment not an *unreasonable* restraint on alienation); *Skyles v. Burges*, 789 S.W.2d 116, 119 (Mo. App. 1990) (if note expressly prohibits prepayment, but mortgagor can provide mortgagee with full benefit of the bargain under the terms of the note, allowing prepayment is consistent with policy against restraints on alienation); and *Mahoney v. Furches*, 503 Pa. 60, 65, 468 A.2d 458 (1983) (presumption that silence of note equals no right to

prepay would contravene general policy against restraint on alienation of property). The Strnads urge this court to reject the perfect tender in time rule and instead, based on other statutory rules and express statements of public policy as well as the "greater interest of justice," adopt the rule that where the contract is silent, the debtor retains the right to prepay without penalty.

Metropolitan observes that several jurisdictions, in considering the perfect tender in time rule, have expressly rejected restraint on alienation arguments, citing *Patterson v. Tirollo*, 133 N.H. 623, 629-30, 581 A.2d 74 (1990) (plaintiffs able to transfer under the terms of the note and mortgage; no unlawful restraint on alienation); and *MacCausland v. Bankers Life Insurance*, 110 Wash. 2d 716, 727, 757 P.2d 941 (1988) (reversing trial court's decision that due-on-sale clause coupled with seven-year prepayment prohibition acted as an unreasonable restraint on alienation). Metropolitan also notes that although the Pennsylvania court in *Mahoney* found the rule did operate as a restraint on alienation, 468 A.2d at 461, the Maryland court in *Promenade Twrs.*, 324 Md. App. at 604, rejected the reasoning in *Mahoney*, finding it failed to properly balance the debtor's interests with the creditor's.

The mortgage instrument in this case contained the following due-on-sale clause:

"In the event the mortgaged premises, or any portion thereof, or any interest therein are sold/mortgaged/or conveyed or become subject to an agreement to sell/mortgage/or convey, prior to the time this loan shall have been paid in full, then the entire indebtedness shall become immediately due and payable at the option of the Mortgagee."

Kansas courts recognize that restraints on alienation, even indirect restraints, are not favored by the law. *Wood v. Hatcher*, 199 Kan. 238, 243, 428 P.2d 799 (1967); see also *First Nat'l Bank & Trust Co. v. Sidwell Corp.*, 234 Kan. 867, 876, 678 P.2d 118 (1984) (indirect restraints on alienation were regarded at common law as a public evil). Any restriction or prohibition against transfer acts as a restraint on alienation and should be strictly construed against the party urging the restriction. 199 Kan. at 243.

A challenge to due-on-sale clauses as restraints on alienation was discussed by this court in *Capitol Fed'l Savings & Loan Ass'n*

*v. Glenwood Manor, Inc.*, 235 Kan. 935, 686 P.2d 853 (1984). We noted that restraints on alienation were defined in the Restatement of Property § 404 (1944) as follows:

" ' "(1) A restraint on alienation, as that phrase is used in this Restatement, is an attempt by an otherwise effective conveyance or contract to cause a later conveyance
> (a) to be void: or
> (b) to impose contractual liability on the one who makes the later conveyance when such liability results from a breach of an agreement not to convey; or
> (c) to terminate or subject to termination all or a part of the property interest conveyed.

" ' "(2) If a restraint on alienation is of the type described in Subsection (1), Clause (a), it is a disabling restraint.

" ' "(3) If a restraint on alienation is of the type described in Subsection (1), Clause (b), it is a promissory restraint.

" ' "(4) If a restraint on alienation is of the type described in Subsection (1), Clause (c), it is a forfeiture restraint." ' " 235 Kan. at 943.

This court ruled due-on-sale clauses were not restraints on alienation, based on analysis by the Nebraska Supreme Court in *Occidental Sav. & Loan Ass'n. v. Venco Partnership*, 206 Neb. 469, 293 N.W.2d 843 (1980). A due-on-sale clause is not a restraint on alienation because it permits the owner to transfer the property, subject to the acceleration of the debt by the creditor. Although this may impede the transfer, other impediments to transfer, *e.g.*, zoning or building restrictions, are also not considered to be either restraints on alienation or contrary to public policy. *Glenwood Manor*, 235 Kan. at 944. We note lenders have legal rights also. If they have complied with all requirements of the law, they are entitled to enforce their due-on-sale clauses, for they are simply not restraints on alienation. *Williams v. First Fed. Sav. & Loan Ass'n, Etc.*, 651 F.2d 910, 926 (4th Cir. 1981).

The restriction on prepayment also does not act as an unreasonable restraint on alienation. The Strnads are free to transfer the property subject, under the due-on-sale clause, to Metropolitan's choice of either accelerating the debt or making the transfer subject to the existing debt and mortgage.

### Conclusion

American courts have traditionally taken the view that com-

petent adults may make contracts on their own terms, provided they are neither illegal nor contrary to public policy and, in the absence of fraud, mistake, or duress, that a party who has fairly and voluntarily entered into such a contract is bound thereby, notwithstanding it was unwise or disadvantageous to that party. *Wille v. Southwestern Bell Tel. Co.*, 219 Kan. 755, 757, 549 P.2d 903 (1976).

The cardinal rule of contract construction requires courts to determine the parties' intent from the four corners of the instrument by construing all provisions together and in harmony with each other rather than by critical analysis of a single or isolated provision. *Barnhart v. McKinney*, 235 Kan. 511, 519, 682 P.2d 112 (1984); *Brown v. Lang*, 234 Kan. 610, 615, 675 P.2d 842 (1984). This rule must be applied prior to the introduction of any extrinsic evidence regarding the intent of the parties. *First Nat'l Bank of Olathe v. Clark*, 226 Kan. 619, 624, 602 P.2d 1299 (1979). Where the language of the contract is clear and can be carried out as written, there is no room for construction or modification of the terms. See *Godfrey v. Chandley*, 248 Kan. 975, Syl. ¶ 2, 811 P.2d 1248 (1991).

A review of the language of the note and mortgage shows the clear intent of the parties. The parties mutually agreed that the Strnads could prepay the note, in part or in full, on two specific dates. The prepayment provision is not ambiguous, nor is it in conflict with other provisions of the contract. When no ambiguity exists, the court must enforce the terms of the agreement. *Hollenbeck*, 250 Kan. at 751. In the absence of statutory law, case law, or contractual permission, a debtor has no more right to pay off an obligation prior to its maturity date than the creditor has to compel collection of the debt prior to its maturity.

The district judge correctly determined that the intent of the parties is indicated from the four corners of the note and mortgage. The judge's conclusion that prepayment of the loan is provided for only on the two dates set out in the written agreements is correct.

Affirmed.