UNITED TUNNELING ENTERPRISES, INC., Plaintiff,

v.

HAVENS CONSTRUCTION COMPANY, INC., and United States Fidelity & Guaranty Company, Defendants.

No. 96–4061–SAC.

United States District Court, D. Kansas.

Oct. 9, 1998.

Edward L. Bailey, John T. Houston, Cosgrove, Webb & Oman, Topeka, KS, John R. Beasley, Bethell, Callaway, Robertson, Beasley & Cowan, Fort Smith, AR, for Plaintiff.

Roy Bash, Linda J. Sheppard, Shughart, Thomson, & Kilroy, P.C., Kansas City, MO, for Defendants.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This is an action in which the plaintiff United Tunneling Enterprises, Inc. ("United") seeks to recover the balance due for its work as a subcontractor from the defendant contractor, Havens Construction Company, Inc. ("Havens") and the defendant surety, United States Fidelity & Guaranty Company ("Fidelity"). Havens has filed a counterclaim against United for liquidated damages and back charges. The case now comes before the court on the plaintiff's motion for partial summary judgment on its first amended complaint and motion for summary judgment on Havens' counterclaim. (Dk.35). The defendant Havens also has filed a cross-motion for summary judgment on its counterclaim for liquidated damages. (Dk.39).

## SUMMARY JUDGMENT STANDARDS

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]here are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.,* 849 F.2d 1269, 1273 (10th Cir.1988).

The initial burden is with the movant to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). If this burden is met, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to" the nonmovant's claim or position. *Martin v. Nannie and Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993) (citations omitted). The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348; it requires "'present[ing] sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor.'" *Thomas v. International Business Machines,* 48 F.3d 478, 484 (10th Cir.1995) (quoting *Bacchus Industries, Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991)). The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmovant. *Id.* A party relying on only conclusory allegations cannot defeat a properly supported motion for summary judgment. *White v. York Intern. Corp.,* 45 F.3d 357, 363 (10th Cir. 1995).

More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). At the same time, a summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences. *Windon Third Oil and Gas v. Federal Deposit*

*Ins.*, 805 F.2d 342, 346 (10th Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

United objects that Havens' cross-motion was filed outside the deadline of February 24, 1997, imposed by the magistrate judge. (Dk.34). United's objection overlooks the district court's later order of March 24, 1997, that extended the deadline for Havens to file its cross-motion for summary judgment to March 28, 1997. (Dk.38). Havens' motion for extension of time stated that the plaintiff consented to the extension. (Dk.37). The court denies United's objection on timeliness.

## STATEMENT OF UNCONTROVERTED FACTS

For purposes of this motion, the court considers the following facts to be uncontroverted:

1. As part of the public works improvement known as the Mill Creek Project, the Johnson County Unified Water District ("Owner") entered into prime contracts in 1993 with several general contractors, including Havens. The Owner contracted with Havens to lay approximately 5.4 miles of sewer pipe.

2. The general or prime contract between Havens and the Owner required Havens to have its work substantially completed by October 23, 1994. The Owner later granted Havens a 42-day extension.

3. As specified in the prime contract, Havens and the Owner agreed that if Havens did not substantially complete its work by this date, then Havens would pay liquidated damages for delay:

> 3.2 Liquidated Damages. OWNER and CONTRACTOR recognize that time is of the essence of the Agreement and that if the Work is not completed within the time specified in paragraph 3.1 above, plus any extensions thereof allowed in accordance with the Contract Documents, OWNER and CONTRACTOR agree that as liquidated damages for delay, but not as a penalty, CONTRACTOR shall pay OWNER *One Thousand Five Hundred* Dollars ($ *1,500* ) for each and every calendar day that expires following the time specified in

paragraph 3.1 above for completion of the Work.

(Dk.36, Ex. C).

4. The path of the sewer pipeline in the Mill Creek project crossed a highway, road, and railroad lines. On February 16, 1994, Havens entered into a subcontract with United for the boring of tunnels under these roadways and lines. Havens prepared the subcontract using an AIA (American Institute of Architects) Document A401, Standard Form of Agreement Between Contractor and Subcontractor.

5. The subcontract required United to have its work substantially completed by August 15, 1994. Havens extended United's substantial completion date to September 24, 1994, as a result of the Owner's prior extension granted to Havens.

6. The subcontract included the following provisions concerning liquidated damages:

> 3.3.1 Liquidated damages for delay, if provided for in Paragraph 9.3 of this Agreement, shall be assessed against the Subcontractor only to the extent caused by the Subcontractor, the Subcontractor's employees and agents, Sub-subcontractors, suppliers or any person or entity for whose acts the Subcontractor may be liable, and in no case for delays or causes arising outside the scope of this Subcontract.
>
> . . . .
>
> 9.3 The Work of this Subcontract shall be substantially completed not later than
>
> *(Insert the calendar date or number of calendar days after the Subcontractor's date of commencement. Also insert any requirements for earlier Substantial Completion of certain portions of the Subcontractor's Work, if not stated elsewhere in the Subcontract Documents.)*
>
> August 15, 1994
>
> Correspond work with Contractor's Construction Schedule, See
>
> "Attachment B,"
>
> subject to adjustments of this Subcontract Time as provided in the Subcontract Documents.

*(Insert provisions, if any, for liquidated damages relating to failure to complete on time.)*

Liquidated damages to be assessed at the same rate as the contractor (See Article 3, Paragraph 3.2 of the Contract Documents).

7. United did not complete its work under the subcontract until May 8, 1995, or over 220 days after the completion date required in the subcontract.

8. Havens did not substantially complete its work on the project until June 16, 1995, or around 200 days after the completion date required in the prime contract.[1] The Owner waived any assessment of liquidated damages against Havens for its delay in completing the project. In lieu of liquidated damages, the Owner agreed to accept $64,113 from Havens to cover the Owner's actual expenses associated with the delay.

9. The subcontract called for Havens to pay United $1,126,127.00 for its work on this project. Havens has paid United $810,654.55 and withheld the balance as liquidated damages for delay. Havens also seeks additional amounts.

10. Bruce Laughlin, vice president of Havens, has averred that United's late performance caused actual damages to Havens beyond its liability for the Owner's late completion charges. According to United, the extra costs incurred by Haven were not caused by United's late performance.

**GOVERNING CONTRACT LAW**

In Kansas, the well-established rule is that the intent of the parties governs the construction of a contract. *Slawson Exploration Co. v. Vintage Petroleum, Inc.*, 78 F.3d 1479, 1481 (10th Cir.1996). "The intention of the parties and the meaning of the contract are to be determined from the [written] instrument itself where the terms are plain and unambiguous." *Wolfgang v. Mid–America Motorsports, Inc.*, 111 F.3d 1515, 1524 (10th Cir.1997) (citing *Fasse v. Lower Heating & Air Conditioning*, 241 Kan. 387, 736 P.2d 930, 933 (1987)). " '[W]here ambiguity or uncertainty of contract is involved in an agreement, the intention of the parties is not ascertained by resort to literal interpretation, but considering all language employed, the circumstances existing when the agreement was made, the object sought to be attained, and other circumstances, if any, which tend to clarify the real intention of the parties.' " *Universal Motor Fuels, Inc. v. Johnston*, 260 Kan. 58, 63, 917 P.2d 877 (1996) (quoting *Richardson v. Northwest Central Pipeline Corp.*, 241 Kan. 752, 758, 740 P.2d 1083 (1987)). "[W]hen terms of a contract are ambiguous, the terms are construed against the drafter of the instrument." *Metropolitan Life Ins. Co. v. Strnad*, 255 Kan. 657, 662, 876 P.2d 1362 (1994) (citing *Thomas v. Thomas*, 250 Kan. 235, 244, 824 P.2d 971 (1992)).

Whether an ambiguity exists in a contract is a question of law for the court. *Weber v. Tillman*, 259 Kan. 457, 476, 913 P.2d 84 (1996). "To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language." *Patrons Mut. Ins. Ass'n v. Harmon*, 240 Kan. 707, 713, 732 P.2d 741 (1987). A finding of ambiguity is not compelled merely because the parties differ over the meaning of a term. *TMG Life Ins. Co. v. Ashner*, 21 Kan.App.2d 234, 242, 898 P.2d 1145 (1995).

An ambiguity does not exist unless the application of the rules of interpretation leaves it genuinely uncertain which one of two or more possible meanings is the proper one. *Simon v. National Farmers Organization, Inc.*, 250 Kan. 676, Syl. ¶ 2, 829 P.2d 884 (1992). There are several relevant rules of interpretation. Beginning with the most basic, terms are given their plain, general, and common meaning. *Wood River Pipeline Co. v. Willbros Energy Services Co.*, 241 Kan. 580, 586, 738 P.2d 866 (1987). All provisions in a contract are considered and construed together and in harmony with each other. *Metropolitan Life Ins. Co.*, 255 Kan. at 671, 876 P.2d 1362. The meaning of a contract should not be assessed from only analyzing a single or isolated provision. *Garvey Center, Inc. v. Food Specialties, Inc.*,

---

1. Havens did not controvert this statement found in United's motion for summary judgment.

214 Kan. 224, 227, 519 P.2d 646 (1974). If a contract includes a series of writings, all writings that are part of the same transaction are interpreted together. *Burge v. Frey,* 545 F.Supp. 1160, 1169 (D.Kan.1982). Reasonable interpretations, rather than unreasonable ones, are favored by the law. *Gore v. Beren,* 254 Kan. 418, 427, 867 P.2d 330 (1994). Interpretations which vitiate the contract's purpose or reduce its terms to an absurdity should be avoided. *First Nat'l Bank of Olathe v. Clark,* 226 Kan. 619, 624, 602 P.2d 1299 (1979). Under the guise of contract construction, the court must not rewrite or insert terms in order to achieve an equitable result or to import an intent never expressed. *Galindo v. City of Coffeyville,* 256 Kan. 455, 466, 885 P.2d 1246 (1994).

▆▆▆▆ The policy behind Kansas law " 'is to permit mentally competent parties to arrange their own contracts and fashion their own remedies.' " *Belger Cartage Serv., Inc. v. Holland Constr. Co.,* 224 Kan. 320, 327, 582 P.2d 1111 (1978) (quoting *Kansas City Structural Steel Co., v. L.G. Barcus & Sons, Inc.,* 217 Kan. 88, 95, 535 P.2d 419 (1975)). The law favors contracts that are "freely arrived at and fairly made." *Id.* "[W]here parties, by agreement, fix the measure of recovery due from one to the other, their agreement governs, and abstract principles of law relating to the measure of recovery when agreements are wanting are inapplicable." *Anderson v. Rexroad,* 180 Kan. 505, 510–11, 306 P.2d 137 (1957) (citations omitted). Consequently, parties may agree on liquidated damages, that is, a set amount of damages in the event of a breach of the contract, "if the set amount is determined to be reasonable and the amount of damages is difficult to ascertain." *Unified School Dist. No. 315 v. DeWerff,* 6 Kan.App.2d 77, 78, 626 P.2d 1206 (1981) (citations omitted).

## SUMMARY OF ARGUMENTS

The plaintiff argues that the parties intended the liquidated damages provision in the subcontract only to pass through the general contractor's liability for liquidated damages to the owner. In support of its position, the plaintiff cites several decisions from other jurisdictions where the general contractor was not allowed to recover liquidated damages from the subcontractor because the owner had not assessed liquidated damages against the general contractor. The plaintiff emphasizes several terms of the subcontract as evidencing that the liquidated damages clause is a pass-through provision. If the court finds the clause to be ambiguous, the plaintiff argues the court then should construe the contract most strongly against Havens.

In opposition, the defendant focuses on the single sentence providing for liquidated damages and asks that the clause be enforced without reference to its own liquidated damage liability to the Owner. The defendant considers the liquidated damages provision in the subcontract to be plain and unambiguous in incorporating only the liquidated damages "rate" of $1500 per day from the prime contract and nothing else. The defendant distinguishes the case law cited by the plaintiff as inapplicable to the provision and facts here.

## ANALYSIS

Looking first at the four corners of the subcontract, the court finds several provisions that evidence the parties' intent to pass through Haven's liability for liquidated damages to United. At ¶ 2.1, there appears a pass-through, flow-down or conduit provision which reads in relevant part:

> 2.1 The Contractor and Subcontractor shall be mutually bound by the terms of this Agreement and, to the extent that provisions of the Prime Contract apply to the Work of the Subcontractor, ... the Subcontractor shall assume toward the Contractor all obligations and responsibilities which the Contractor, under the Prime Contract, assumes toward the Owner and the Architect. [T]he Subcontractor shall have the benefit of all rights, remedies and redress against the Contractor which the Contractor, under the Prime Contract, has against the Owner, insofar as applicable to this subcontract.

"Such clauses are designed to incorporate into the subcontract those provisions of the general contract relevant to the subcontractor's performance." *Industrial Indemnity*

*Co. v. Wick Construction Co.*, 680 P.2d 1100, 1103 (Alaska 1984). It means that " 'the same rights and duties should flow equally from the owner down through the general contractor to the subcontractor, as well as flowing from the subcontractor up through the general contractor to the owner.' " *Id.* (quoting R. Cushman, *The Construction Industry Formbook,* § 5.08 (1979)). In effect, "[t]he parties to the subcontract thus assume the correlative position of the parties to the prime contract." *Id.* (citing A. Dib, *Forms and Agreements for Architects, Engineers and Contractors,* Chap. 7, § 1[1] (1979)).

At ¶ 3.3.1, the subcontract limits the Contractor's right of assessing liquidated damages to only those "caused by the Subcontractor" or by anyone for whom the Subcontractor is liable. This clause appears intended to address the situation where a Contractor has incurred liability for liquidated damages and now must apportion the liability to the Subcontractors responsible for the delay. This clause provides the basis on which the Contractor must assess a Subcontractor's liability for the Contractor's liquidated damages. In short, the Subcontractor is liable for only those liquidated damages which it caused.

Paragraph 9.3 of the subcontract specifically refers to the Contractor's liability for liquidated damages and incorporates the terms of that liability. Rather than just obligating the Subcontractor to pay the Contractor $1,500 per calendar day, the subcontract refers to the specific paragraph in the prime contract which establishes a Contractor's liability for liquidated damages. The subcontract permits the Contractor to assess liquidated damages "at the same rate as the contractor" must pay under the prime contract. By so referring to the Contractor's liability and adopting the same rate of liability, the parties intended the subcontract to pass through the Contractor's liability for liquidated damages to the Subcontractor. The defendant Havens concedes as much in the following argument:

Most of the time, the liquidated damages clause at issue here will, *in effect,* serve as a conduit provision. Normally the same amount of liquidated damages is passed along because the same delay is passed along. Had Havens passed along United's delay to the Owner and the Owner, in turn, asserted its contractual right to impose liquidated damages on Havens, the provision at issue here would, *in effect,* serve as a conduit provision.

(Dk. 46, Haven's Reply Memorandum, p. 3). In short, the court finds that the subcontract plainly and unambiguously passes through the Contractor's liability for liquidated damages to the responsible Subcontractor.

The subcontract, however, does not have the same clarity in addressing whether a Contractor's pass-through liability is the only kind of liquidated damages that can be assessed against the Subcontractor. Havens argues the subcontract should be enforced as allegedly written, that is, the Subcontractor must pay the Contractor liquidated damages without regard to whether the Owner assessed any against the Contractor. According to United, the only fair and reasonable interpretation of the subcontract is that United would be liable for liquidated damages in the event the Contractor was held liable for them and that United would enjoy the benefit of the Owner having waived the Contractor's liability for liquidated damages.

The court considers the liquidated damages clause appearing at ¶ 9.3 to be ambiguous with respect to the Subcontractor's liability for liquidated damages when the Owner does not assess liquidated damages against the Contractor. It is true that the clause speaks to "liquidated damages" in general and does not otherwise define that term as limited in kind or nature. On the other hand, the clause directly links the assessment of the liquidated damages to the prime contract and to the Contractor's liability for the same. Neither the subcontract nor the prime contract define what is meant by the "same rate as the contractor." Moreover, the clause is open-ended leaving the reader to supply the words following "contractor." [2]

2. Havens reads the clause to end: " 'at the same rate [as the contractor]' as stated in the prime contract." (Dk.40, p. 5). United argues, in effect, that the clause should be read to end: "at the same rate as the contractor" has been as-

Consequently, there is genuine uncertainty over the meaning of ¶ 9.3.

■ The intention of the parties is no longer a matter of simply giving a literal interpretation to "liquidated damages." *See Universal Motor Fuels*, 260 Kan. at 63, 917 P.2d 877. The court now must consider all the language employed, the circumstances existing when the subcontract was made, the parties' apparent objective behind the terms at issue, and all other circumstances tending to clarify the parties' real intention. *Id.* Finally, the court must be mindful that when a term is ambiguous, it is to be construed against the drafter of the contract. *Metropolitan Life Ins.*, 255 Kan. at 662, 876 P.2d 1362.

When the subcontract was made, the parties knew the terms of the prime contract, including Haven's agreement to pay liquidated damages of $1,500 per calendar day to the Owner. In drafting the liquidated damages clause of the subcontract, Haven chose not to write simply that United must pay $1,500 for every day after August 15, 1994, that passes without United completing its work. Instead, Havens directly referenced its own liability for liquidated damages and the corresponding provision in the prime contract. What Havens drafted as the liquidated damages clause of the subcontract was not written so that it can even function apart from the terms incorporated from the prime contract. Absent incorporation and substitution of relevant terms from the prime contract, the clause within the subcontract does not specify against whom the liquidated damages are assessed or the manner for calculating the damages to be assessed. The plain inference from these circumstances is that the parties did not intend for the liquidated damages clause of the subcontract to be interpreted and applied apart from the interpretation and operation of the liquidated damages clause in the prime contract.

As Haven itself recognizes in its reply brief, (Dk.46), the subcontractor's delay "normally" is passed along to the contractor resulting in the contractor's liability for liquidated damages to the owner in the "same amount." (Dk.46, p. 3). Even though this is the normal or expected situation, the subcontract allows Haven to recover no more than $1,500 per day in liquidated damages. In other words, when Havens drafted the subcontract, it could not have expected under normal or expected circumstances that the subcontract would allow it to recover more liquidated damages than what it would have already owed to the Owner. If the parties had truly intended the subcontract to not just offset Havens' liability to the Owner but also to compensate Havens for its own damages, then the subcontract would have required United to pay in excess of $1,500 per day. There is no evidence of record that the parties negotiated and agreed that $1,500 was a reasonable estimate of Havens' own damages as a result of United's delay. By choosing the "same rate," the parties necessarily intended the subcontract to compensate Havens only for those liquidated damages paid to the Owner.

The absence and presence of other language in the subcontract further supports United's position. A court "cannot read one part" of a contract "to the exclusion of another." *TMG Life Ins. Co.*, 21 Kan.App.2d at 249, 898 P.2d 1145 (citation omitted). All relevant language in the contract must be considered and construed in harmony with other provisions. *Slawson Exploration Co.*, 78 F.3d at 1481.

Absent from the instrument is any convincing indication that parties considered the $1,500 to be a reasonable estimate of Havens' own damages as opposed to a mere offset of Havens' liability to the Owner. As the drafter of the subcontract, Havens plainly had the opportunity and ability to set out a liquidated damages clause that did more than pass through its liability to United. When ambiguous, the terms of a contract are construed against the drafter of the contract. *Metropolitan Life Ins. Co.*, 255 Kan. at 662, 876 P.2d 1362.

Paragraph 3.3.1 of the subcontract is written as contemplating both the possibility of liquidated damages existing prior to an assessment against the subcontractor and the possibility of liquidated damages existing

---

sessed under the prime contract. Neither reading of ¶ 9.3 is wholly unreasonable.

even though not caused by the subcontractor. As used in that paragraph, "liquidated damages" logically must include more than what United owed and would necessarily mean those existing because the Owner had assessed them against the Contractor. In the interest of harmony, "liquidated damages" in ¶ 9.3 also must be construed as to include those that the Owner had assessed against the Contractor.

Finally, the effect of the "flow-down" provision in ¶ 2.1 is entirely consistent and in harmony with United's construction of the liquidated damages clause. Paragraph 2.1 plainly reflects that the parties intended that whatever the Owner required from or bestowed to Contractor, if applicable, would flow down to the Subcontractor. Indeed, Havens passed down to United the benefit of the 42–day extension that the Owner granted to Havens. "Subsequent conduct of parties to a contract or written instrument may aid" the court in interpreting the contract. *Heyen v. Hartnett*, 235 Kan. 117, Syl. ¶ 4, 679 P.2d 1152 (1984). It follows then that United should likewise enjoy the benefit of the Owner's waiver of liquidated damages.

Havens argues that United's interpretation does not fit with the factual circumstances contemplated by the parties when the subcontract was made. "At the time the subcontract was executed, the parties did not know how contract performance would impact the completion date." (Dk.40, p. 6). Because Havens has submitted no evidence of record to support this bare allegation, the court need not consider it. Logically, Havens must have believed its own ability to meet the completion date depended upon United timely completing its work; otherwise, Havens would not have required United to have its work completed almost two months before Havens' own completion date.

Havens also argues that United's interpretation is strained as demonstrated by the following illustration. Assume "that more than one subcontractor completed performance beyond its contract deadline, resulting in a longer delay by Havens," and assume also that "United's delay caused some but not all of Havens' delay, the amount of liquidated damages assessed against Havens should not be fully 'passed through' to United because United would only be responsible for part of the liquidated damages assessed against Havens." (Dk.40, p. 7). Havens' argument is flawed, because ¶ 2.1 of the subcontract already remedies this situation by allowing the Contractor to pass on only those liquidated damages "caused by" the Subcontractor or anyone for whom the Subcontractor is liable.

On the arguments and evidence presented in the parties' motions, the court finds that the law and uncontroverted facts sustain United's interpretation of the subcontract. Havens may collect liquidated damages under the subcontract from United only to the extent that the Owner has assessed liquidated damages against Havens. If the Owner waived the liquidated damages against Havens, then United is not obligated under the subcontract to pay Havens any liquidated damages.

IT IS THEREFORE ORDERED that the plaintiff United's motion for partial summary judgment and motion for summary judgment on Haven's counterclaim (Dk.35) is granted;

IT IS FURTHER ORDERED that the defendant Havens' cross-motion for summary judgment (Dk.39) is denied.