**UNITED STATES of America,
Plaintiff,**

v.

**Troy C. STOEBER, Defendant.**

**No. 01–1308–JTM.**

United States District Court,
D. Kansas.

Jan. 28, 2003.

---

**65.** *Nwakpuda v. Falley's, Inc.,* 14 F.Supp.2d 1213, 1215 (D.Kan.1998).

Christina L. Medeiros, Office of United States, Attorney, Kansas City, KS, Tanya S. Wilson Office of United States Attorney, Topeka, KS, for Plaintiff. .

Jeffrey P. DeGraffenreid, Foulston Siefkin LLP, Wichita, KS, John F. Reals, Reals & Weber, Wichita, KS, for Defendant.

### MEMORANDUM AND ORDER

MARTEN, District Judge.

This matter comes before the Court on the Defendant's motion for summary judgment (Dkt. No. 26) and the Plaintiff's motion for summary judgment (Dkt. No. 28). In this breach of contract case, the Plaintiff seeks reimbursement from the Defendant for the monies it expended on the Defendant's medical education. Both the Defendant's and the Plaintiff's summary judgment motions are fully briefed and ripe for determination. For the reasons set forth below, the Court grants the Plaintiff's motion for summary judgment and denies the Defendant's motion for summary judgment.

## I. Statement of Facts

On July 7, 1994, Defendant Troy C. Stoeber executed an F. Edward Hebert Armed Forces Health Professions Scholarship Program and Financial Assistance (AFHPSP/FAP) Contract. Under the Scholarship Agreement, the Defendant agreed to serve four years on active duty and serve four years of sponsorship in the AFHPSP/FAP. Pursuant to the contract, the Defendant began his medical education at Creighton University School of Medicine in August, 1994.

In March of 1995, during the Defendant's spring break from Creighton University School of Medicine, he suffered an acute psychotic episode and was hospitalized. His discharge diagnosis was Bipolar Disorder, mixed. The Defendant finished his second semester of medical school.

On August 28, 1995, the United States Air Force recommended that the Defendant be administratively discharged from military service for medical reasons. The recommendation to discharge the Defendant was based on an Air Force physician's determination that the defendant was medically disqualified for continued military service after the Defendant was diagnosed with Bipolar Disorder with Psychotic Episode (Mixed).

On December 15, 1995, the Secretary of the Air Force directed that recoupment action be taken for the funds the Air Force expended on the Defendant's medical training, as the Defendant was being discharged as a result of a permanent medical disqualification without entitlement to disability processing. The Plaintiff does not seek reimbursement on the basis that the Defendant's separation from the Air Force was voluntary or because of misconduct.

On January 22, 1996, the Defendant was honorably discharged from all appointments in the United States Air Force. The Defendant was honorably discharged from the U.S. Air Force Reserve in accordance with Air Force Instruction 36–3209, para. 2.16, Physical Disqualification.

The United States Air Force paid for all of the Defendant's costs to attend Creighton University School of Medicine for the Fall Semester of 1994 and the Spring Semester of 1995.

The Defendant graduated from Creighton University School of Medicine in 1998. The Defendant is now a licensed physician.

If the Court determines that the Defendant must repay the United States under the terms of the AFHPSP/FAP contract, the Court should enter judgment against the Defendant in the total amount of $35,824.93 as of September 17, 2002, which includes principal in the amount of $26,635.44, accrued interest to that date in the amount of $3,670.48, and accrued penalties to that date in the amount of $5,519.01, plus interest accruing after September 17, 2002, at the rate of $3.65 per day, plus penalties accruing after that date at the rate of $4.38 per day.

Although the Defendant challenges the aforementioned finding, the Defendant does not provide any evidence that would allow the Court to determine if the facts are truly controverted. *See also* D. Kan. Rule 56.1(d)

## II. Summary Judgment Standards

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgments as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all of the evidence in a light most favorable to the opposing party. *Jurasek v. Utah State Hosp.*, 158 F.3d 506, 510 (10th Cir. 1998). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Baker v. Board of Regents*, 991 F.2d 628, 630 (10th Cir.1993). The moving party need not disprove the non-moving party's claim or defense; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

The party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the materi-

al facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). The opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the opposing party must present significant admissible probative evidence supporting that party's allegations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### III. Analysis and Discussion

Plaintiff contends that the Defendant is required to reimburse the Air Force for the monies he received to attend medical school, based on the AFHPSP/FAP Contract signed by the Defendant. The Defendant disputes this reading of the AFHPSP/FAP Contract and contends that reimbursement is not necessary. In the pretrial order, the parties stipulated that 10 U.S.C. § 2005 and Kansas contract law apply to the contract at issue. Thus, the Court's analysis will proceed under these dictates.

 Generally, the advance education contracts potential service men and women enter into with the Armed Forces are governed by 10 U.S.C. § 2005. Under Kansas law, "the intent of the parties governs the construction of a contract." *United Tunneling Enterprises, Inc., v. Havens Construction Co. Inc.*, 35 F.Supp.2d 789, 793 (D.Kan.1998) (citing *Slawson Exploration Co. v. Vintage Petroleum, Inc.*, 78 F.3d 1479, 1481 (10th Cir.1996)). "The intention of the parties and the meaning of the contract are to be determined from the [written] instrument itself where the terms are plain and unambiguous." *United Tunneling Enterprises*, 35 F.Supp.2d at 793

(quoting *Wolfgang v. Mid–America Motorsports, Inc.*, 111 F.3d 1515, 1524 (10th Cir.1997)) (additional citations omitted). "Ambiguity is a question of law to be determined by the court." *Nat'l Minority Supplier Dev. Council Bus. Consortium Fund, Inc., v. First Nat'l Bank of Olathe*, 83 F.Supp.2d 1200, 1202 (D.Kan.1999) (citations omitted). "A finding of ambiguity is not compelled merely because the parties differ over the meaning of a term." *United Tunneling Enterprises*, 35 F.Supp.2d at 793 (citations omitted).

 The Court also notes that in reading contracts, "reasonable interpretations, rather than unreasonable ones, are favored by the law." *United Tunneling Enterprises*, 35 F.Supp.2d at 794 (citations omitted). "Results which vitiate the contract's purpose or reduce its terms to an absurdity should be avoided." *In re Villa West Associates*, 146 F.3d 798, 803 (10th Cir.1998) (citing *Kansas State Bank & Trust Co. v. DeLorean*, 7 Kan.App.2d 246, 640 P.2d 343, 349 (1982) (quoting *Weiner v. Wilshire Oil Co.*, 192 Kan. 490, 389 P.2d 803, 808 (1964)).

First, considering the provision of the Defendant's AFHPSP/FAP Contract, which permits reimbursement the Court looks to Paragraph 6(c). Paragraph 6(c) states:

> [S]hould I become unable to commence the period of ADSC [Active Duty Service Commitment] specified in this contract or become unable to complete my medical education program, I agree to reimburse the United States in one lump sum for the total cost of advanced education paid by the U.S. Government as specified in 10 U.S.C. § 2005.

10 U.S.C. § 2005 provides some general guidance about when the signees of such contracts may be required to reimburse the Armed Forces. § 2005(a)(3) states that "if such person, voluntarily or because of

misconduct, fails to complete the period of active duty specified in the agreement, or fails to fulfill any term or condition prescribed pursuant to clause (4)" reimbursement will be required. § 2005(a)(4) is a catch-all provision that allows the Secretary of each military department to prescribe additional terms and conditions that if unfulfilled will require reimbursement.

Both parties agree that the Plaintiff is not seeking reimbursement on the basis that the Defendant's separation from the Air Force was voluntary or was the result of misconduct. Thus, the Plaintiff necessarily must be seeking reimbursement on the basis of the 'additional terms and conditions' included in the Defendant's AFHPSP/FAP Contract, added pursuant to § 2005(a)(4). These additional terms are included primarily in Paragraphs 10 and 11 of the Defendant's AFHPSP/FAP Contract. As the Plaintiff has stated that it is not seeking reimbursement based on Paragraph 11, the Court will focus its inquiry on the terms and conditions included in Paragraph 10.

Paragraph 10 states:

10. If I am dropped from any professional school for deficiency in studies or conduct; or if, for other reasons, I must repeat an academic period or discontinue my professional education; or if I refuse to comply with or fail to meet the applicable standards of the United States Air Force (including physical fitness), or if I otherwise fail to complete my obligation(s) under this agreement, then:

 a. The Air Force will suspend my AFHPSP/FAP benefits upon notification of any of the above circumstances and will not reinstate those benefits unless I am deemed eligible for continued participation in the AFHSP/FAP. In the case of repeating an academic term, the Air Force may place me on Leave of Absence for that

period or exercise one of the options of paragraph (b) through (d) below:

 b. The Air Force may remove me from the AFHPSP/FAP and call me to active duty in an appropriate military capacity to serve my ADSC incurred from all sources, but in no instance will the ADSC be less than the 2–year minimum ADSC for the first 2 years of AFHPSP/FAP.

 c. The Air Force may, in lieu of calling me to active duty, transfer me to a health professional shortage area designated by the Secretary of Health and Human Services for a period equal to the period necessary or me to complete my obligation under this agreement.

 d. The Air Force may, at its option, separate me and recoup the total cost of advanced education in lieu of calling me to active duty.

The parties disagree upon the interpretation of Paragraph 10 and its reimbursement requirements. The Defendant contends that Paragraph 10 requires contract signees to reimburse the Air Force only when an academic term must be repeated. As he did not have to repeat a semester, the Defendant argues that he is should not be responsible for reimbursement. On the other hand, the Plaintiff argues that when Paragraph 10 is read in conjunction with Paragraph 6 and the preamble it shows that the Defendant is required to reimburse the Air Force. The Plaintiff argues, based on Paragraph 10, reimbursement is required whenever a contract signee fails to meet the applicable standards of the Air Force. The Plaintiff disputes the Defendant's reading of Paragraph 10 and contends that it can not be parsed so narrowly.

Considering the four corners of the document, the Court finds that the terms and conditions set forth in Paragraph 10 are

unambiguous. The mere fact that the parties disagree over the interpretation and requirements of Paragraph 10 does not make it ambiguous.

■ Following the terms of Paragraph 10, when a contract signee is dropped from professional school, must repeat an academic period or discontinue professional education, fails to meet the applicable standards of the Air Force or otherwise does not complete the obligations of the contract, the Air Force may pursue options (a) through (d). This can be seen from the structure of the paragraph, which has an opening clause followed by the four options listed as (a), (b), (c), and (d). Thus, Paragraph 10 sets out broad categories of situations in which the Air Force may seek reimbursement. 10(a) reveals that in the case of repeating an academic term, the Air Force, in addition to options of (b), (c), and (d) may place the contract signee on Leave of Absence. This interpretation of Paragraph 10 is logical and reasonable. As the Court noted earlier, reasonable interpretations of contracts are favored.

The Defendant's contention that Paragraph 10 requires contract signees to reimburse the Air Force only when an academic term must be repeated does not make sense. If this were the case, there would be no need to designate option (a) as "the Air Force will suspend my AFHPSP/FAP benefits upon notification of any of the above circumstances and will not reinstate those benefits unless I am deemed eligible for continued participation in the AFHSP/FAP." This would simply be included in the first clause of the paragraph. As this option is one of a list of four options, it is only reasonable to conclude that all of the options apply to the situations listed in the opening clause of Paragraph 10.

Furthermore, it is illogical that the Air Force would reserve the right to seek reimbursement from students who must repeat an academic term and not apply the same punishment for students who are dropped from their professional school or fail to meet the applicable standards of the Air Force. Reading Paragraph 10 in such a narrow manner would basically vitiate the contract's purpose. As the Court noted earlier, "results which vitiate the contract's purpose or reduce its terms to an absurdity should be avoided." *In re Villa West Associates,* 146 F.3d 798, 803 (10th Cir.1998) (additional citations omitted).

■ The Defendant argues that even if Paragraphs 6 and 10 were read "generally to require reimbursement under some circumstances, the more specific provisions of [P]aragraph 11 control the contract's meaning." The Defendant correctly cites the contract principle that "in discerning the parties' intent, the Kansas courts have long followed the maxim that specific provisions of a contract control over general." (Def.'s Resp. to Pl.'s Mot. for Summ. J. at 3). However, the Court does not agree with the Defendant's application of this principle. In making its decision, the Court is not construing Paragraphs 6 and 10 to read general obligations into the contract. Rather, the Court finds that a specific obligation arises from the plain and unambiguous terms of Paragraph 10.

As the terms in the contract are plain and unambiguous, the Court is able to determine the intention of the parties from the contract itself. It was determined that the Defendant was medically disqualified for service, so he was honorably discharged. It is clear that the Defendant did not meet the Air Force basic standard of fitness for continued service. Following the terms of Paragraph 10, when a contract signee fails to meet applicable standards the Air Force may pursue options (a) through (d). In this case, the Air Force has chosen to enforce option (d). Thus, the Defendant is required to reim-

burse the Air Force for the money it spent on the Defendant's advanced education.

The court enters judgment against the Defendant in the total amount of $35,824.93 as of September 17, 2002, which includes principal in the amount of $26,635.44, accrued interest to that date in the amount of $3,670.48, and accrued penalties to that date in the amount of $5,519.01, plus interest accruing after September 17, 2002, at the rate of $3.65 per day, plus penalties accruing after that date at the rate of $4.38 per day.

IT IS, THEREFORE, BY THE COURT, ORDERED this ___ day of January, 2003 that: 1) the PLAINTIFF UNITED STATES' motion for summary judgment (Dkt. No. 28) is granted and judgment is against DEFENDANT TROY C. STOEBER is entered in accordance with above; 2) the DEFENDANT TROY C. STOEBER's motion for summary judgment (Dkt. No. 26) is denied.